UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, JANE DOE-2, a law enforcement officer, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN : : : : : : : : : | Civil Action No. 24-cv-04096-CCC-ESK |
| PLAINTIFFS, : : : | |
| vs. : : | |
| DELVEPOINT, LLC, RICHARD ROES 1-10; fictitious names of unknown individuals and and ABC COMPANIES 1--0, fictitious names of unknown entities, : : : : : | |
| DEFENDANTS. : | |

To:    Matthew J. Platkin
       Attorney General of New Jersey
       RJ Hughes Justice Complex
       25 Market Street, Box 080
       Trenton, New Jersey 08625-0080

## NOTICE OF CONSTITUTIONAL QUESTION

PLEASE TAKE NOTICE that Defendant DELVEPOINT, LLC ("Delvepoint") by and through their attorneys WADE CLARK MULCAHY, LLP serves this notice of constitutional question on the State of New Jersey's Attorney General.

While motivated by proper intentions, the constitutionality of N.J.S.A. 56:8:-166.1, better known as "Daniel's Law" as applied to the case of Delvepoint has been questioned, insofar that Daniel's Law is an infringement on Delvepoint's commercial free speech and due process rights. Delvepoint explicitly acknowledges that there is no question that the State of New Jersey has a

substantial interest in protecting its present and former judges, prosecutors, law enforcement officers, child protection investigators, and their immediate family members from the sort of harm and tragedy experienced by Judge Anderl and her son Daniel. However, Daniel's Law as currently written is more extensive than necessary to serve New Jersey's interest because it allows for any person, through any means, to request removal of information without any form of verification. Further, without a verification process, the statute as written effectively violated Delvepoint's due process rights, as Delvepoint cannot ensure that the protected speech being removed is on behalf of a "covered person" before being subjected to civil penalties. While we acknowledge the importance of protecting covered persons under Daniel's Law, the statue as written fails to achieve New Jersey's interests while remaining unduly burdensome.

The pleadings raising these constitutional questions are:

1.    In the United States District Court in the District of New Jersey, Civil Action No. 24-cv-04096-CCC-ESK, Defendant Delvepoint LLC's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and Memorandum of Law in Support, Filed March 25, 2024 (enclosed).

Thank you for your consideration.

Dated: Springfield, NJ
        March 28, 2024

Respectfully Submitted,

WADE CLARK MULCAHY LLP

*/s/ Robert J. Cosgrove*
_____
By: Robert J. Cosgrove, Esq.
Attorneys for Defendant Delvepoint, LLC
955 South Springfield Avenue, Suite 100
Springfield, NJ 07081
267.665.0743
WCM No.: 827.16116

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, JANE DOE-2, a law enforcement officer, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN : : : : : : : : : | Civil Action No. 24-cv-04096-CCC-ESK **MOTION TO DISMISS** |
| PLAINTIFFS, : : | |
| vs. : : | |
| DELVEPOINT, LLC, RICHARD ROES 1-10; fictitious names of unknown individuals and and ABC COMPANIES 1--0, fictitious names of unknown entities, : : : : : | |
| DEFENDANTS. : | |

## DEFENDANT DELVEPOINT, LCC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P 12(b)(6)

Defendant Delvepoint, LLC, ("Delvepoint") by and through its undersigned counsel, moves this Honorable Court pursuant to Fed R. Civ. P 12(b)(6) to dismiss the Complaint made by Plaintiff Atlas Data Privacy Corporation ("Atlas") against Delvepoint because the absence of a verification mechanism in the statute makes Daniel's Law an unconstitutional abridgement of commercial free speech rights and a violation of Delvepoint's due process rights.

1.  On February 24, 2024, Atlas, as an assignee of alleged covered persons under "Daniel's Law", filed a complaint and summons in the Superior Court of New Jersey, Morris County, which is attached hereto as **Exhibit A[1]**.

2.  The crux of Atlas' complaint is that Delvepoint violated Daniels Law, codified in N.J.S.A 56:8:-166.1.

3.  Daniel's Law was passed in response to the fatal and tragic shooting of Daniel Anderl, the son of a federal judge whose home address was accessed via the internet.

4.  Under Daniel's Law, New Jersey courts may find civil liability against a person, business, or association that discloses "on the internet or otherwise make available" the home address or telephone number of any "covered person".

5.  Daniel's Law further states that businesses, upon a written request by an authorized person seeking to prohibit disclosure of such information of a covered person, have ten (10) business days to remove such information.

6.  A covered person under Daniel's Law is, in part, an active or retired judicial officer, law enforcement officer, child protective investigator, or prosecutor, as well as "any immediate family member residing in the same household" as the person above.

7.  Atlas alleges that on or about January 1, 2023, approximately 16, 257 covered persons, through Atlas, transmitted a written notice to Delvepoint requesting Delvepoint to cease disclosure of their home address and/or unpublished telephone number, and further that Delvepoint refused to do so. *See* **Exhibit A**, Complaint, ¶ 59-61.

---

[1] Exhibit A is attached to the affirmation of Robert J. Cosgrove in Support of Defendant Delvepoint LLC's 12(b)(6) Motion to Dismiss, filed on March 25, 2024

8. The named plaintiffs are allegedly active or retired New Jersey police officers who have experienced threats to themselves or their families by way of third-party access to protected information.

9. The notifications given to Delvepoint and referenced in the complaint do not include any information that establishes that the alleged covered persons are, in fact, covered persons. All the notifications state are:

*To Whom it May Concern,*

*I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act). Pursuant to the Act and Section 3 of New Jersey P.L .2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:*

*Name:*

*Phone:*

*Sincerely,*
*[Name of Covered Person]*

10. The complaint further alleges Delvepoint is an entity that discloses or re-discloses on the internet or otherwise makes available the home addresses and unpublished home telephone numbers of covered persons. *See* **Exhibit A** Complaint at ¶ 37.

11. On March 22, 2024, Delvepoint filed a Notice for Removal to this Honorable Court and filed a copy of such notice with the Clerk of the Superior Court, District of New Jersey, Morris County to effect removal pursuant to 28 U.S.C.A. § 1446(d).

12. As more fully explained in the accompanying Memorandum of Law, Delvepoint submits that, while motivated by good and proper intentions, Daniel's Law, as applied to

Delvepoint, is an unconstitutional infringement on Delvepoint's commercial free speech and due process rights.

13. Specifically, Delvepoint's alleged collection and dissemination of the identifying information is clearly "speech" within the meaning of the First Amendment. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011); ); *see also Bartnicki v. Vopper*, 532 U.S. 514, 527, (2001).

14. While Delvepoint does not dispute New Jersey's substantial interested in protecting information of "covered persons", Daniel's Law nonetheless operates to restrain the way in which Delvepoint may disseminate said identifying information, thereby making the restraint a depravation of Delvepoint's First Amendment rights.

15. For commercial speech, the Court will see if the statute as written is "not more restrictive than is necessary". *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 563 (1980).

15. Under the Fourteenth Amendment, a state may not deprive a person of life, liberty, or property without due process of law, including free speech. U.S. Const. amend. XIV; *See also Am. Future Sys., Inc. v. Pennsylvania State Univ.,* 688 F.2d 907, 915 (3d Cir. 1982).

16. Therefore, when free speech, including commercial speech, is restricted by statute, the deprived party retains its right to be afforded due process. *See The Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 570 (1972).

17. Here, the home addresses and phone numbers of "covered persons" disclosed by Delvepoint is commercial speech afforded protection under the First Amendment.

18. Delvepoint explicitly acknowledges that there is no question that the State of New Jersey has a substantial interest in protecting its present and former judges, prosecutors, law

enforcement officers, child protection investigators, and their immediate family members from the sort of harm and tragedy experienced by Judge Anderl and her son, Daniel.

19.     Delvepoint also does not dispute that Daniel's Law advances New Jersey's interest in providing protection by allowing "covered persons" as defined in the statute to request a business to remove otherwise lawfully obtained data and information -- specifically a covered person's home address and unpublished home telephone number, from the internet or where otherwise available.

20.     However, Daniel's Law, as currently written, is "more extensive than necessary" to serve New Jersey's interest because it allows for any person, through any means, to request removal of their information without any form of verification mechanism.

21.     Additionally, Daniel's Law as written deprives Delvepoint of its due process rights because it restricts commercial speech without providing Delvepoint with a verification mechanism by which to comply with the statute prior to civil penalties being exacted against it.

WHEREFORE, Delvepoint respectfully requests that this Court grant its motion to dismiss the Complaint in its entirety and grant such other, further and different relief as this Court deems just and proper.


Dated: Springfield, NJ
          March 25, 2024


                              Respectfully Submitted,

                              WADE CLARK MULCAHY LLP

                              /s/ Robert J. Cosgrove

                              _____

By: Robert J. Cosgrove, Esq.
Attorneys for Defendant Delvepoint, LLC
955 South Springfield Avenue, Suite 100
Springfield, NJ 07081
267.665.0743
WCM No.: 827.16116

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, JANE DOE-2, a law enforcement officer, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN :<br><br>    PLAINTIFFS, :<br><br>vs. :<br><br>DELVEPOINT, LLC, RICHARD ROES 1-10; fictitious names of unknown individuals and and ABC COMPANIES 1--0, fictitious names of unknown entities, :<br><br>    DEFENDANTS. : | Civil Action No. 24-cv-04096-CCC-ESK<br><br>**AFFIRMATION** |

---

## AFFIRMATION OF ROBERT J. COSGROVE IN SUPPORT OF DEFENDANT DELVEPOINT, LCC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

I, ROBERT J. COSGROVE, an attorney duly admitted to practice law in the United States District Court, District of New Jersey, hereby affirms under the penalty of perjury:

1.      I am a member of the law firm of WADE CLARK MULCAHY LLP, attorneys for defendant Delvepoint, LLC ("Delvepoint"). I submit this declaration in support of Delvepoint's Fed. R. Civ. P. 12 (b)(6) motion to dismiss Plaintiff Atlas Data Privacy Corporation ("Atlas")'s Complaint.

2.      On February 24, 2024, Atlas, as an assignee of alleged covered persons under Daniel's Law, filed a complaint and summons in the Superior Court of New Jersey, Morris County. *See* **Exhibit A**, Complaint.

3.       On March 22, 2024, Delvepoint filed a Notice for Removal to this Honorable Court, and filed a copy of such notice with the Clerk of the Superior Court, District of New Jersey, Morris County to effect removal pursuant to 28 U.S.C.A. § 1446(d).

3.       According to the Complaint, Delvepoint has violated "Daniels Law" (N.J.S.A 56:8:-166.1). Specifically, Atlas alleges that on or about January 1, 2023, approximately 16, 257 covered persons, through Atlas, transmitted a written notice to Delvepoint requesting Delvepoint to cease disclosure of their home address and/or unpublished telephone number, and further that Delvepoint refused to do so. *See* **Exhibit A**, Complaint, ¶ 59-61.

4.       The plaintiffs are allegedly active or retired New Jersey police officers who have experienced threats to themselves or their families by way of third-party access to protected information.

5.       The complaint further alleges Delvepoint is an entity that discloses or re-discloses on the internet or otherwise makes available the home addresses and unpublished home telephone numbers of covered persons. *See* Complaint at ¶ 37.

6.       Daniel's Law, codified in N.J.S.A. 47:1A-1.1 and effective as of July 20, 2023, New Jersey courts may find civil liability against a person, business, or association that discloses "on the internet or otherwise make available" the home address or telephone number of any "covered person".

7.       N.J.S.A 56:8:-166.1 further states that businesses, upon a written request by an authorized person seeking to prohibit disclosure of such information of a covered person, have ten (10) business days to remove such information.

8.　A covered person under Daniel's Law is, in part, an active or retired judicial officer, law enforcement officer, child protective investigator, or prosecutor, as well as "any immediate family member residing in the same household" as the person above.

9.　Courts may award liquidated damages of $1,000 per violation of Daniel's Law, along with punitive damages and reasonable attorney's fees and litigation costs.

10.　The notifications given to Delvepoint and referenced in the complaint do not include any information that establishes that the alleged covered persons are, in fact, covered persons.

11.　In regard to such alleged violations of Daniel's Law, Atlas has failed to state facts to demonstrate any verification that the persons submitting claims to Delvepoint qualify as "Covered Persons".

WHEREFORE, Delvepoint respectfully requests this Honorable Court issue an order dismissing Atlas's Complaint pursuant to Fed. R. Civ. P 12(b)(6) for failure to state a claim upon which relief can be granted because Daniel's Law's application to Delvepoint is an unconstitutional abridgement of commercial free speech and due process rights.


Dated: Springfield, NJ
　　　　March 25, 2024


　　　　　　　　　　　　　　　　　　WADE CLARK MULCAHY LLP

　　　　　　　　　　　　　　　　　　*/s/ Robert J. Cosgrove*

　　　　　　　　　　　　　　　　　　_____

　　　　　　　　　　　　　　　　　　By: Robert J. Cosgrove, Esq.
　　　　　　　　　　　　　　　　　　Attorneys for Defendant Delvepoint, LLC
　　　　　　　　　　　　　　　　　　955 South Springfield Avenue, Suite 100
　　　　　　　　　　　　　　　　　　Springfield, NJ 07081
　　　　　　　　　　　　　　　　　　267.665.0743
　　　　　　　　　　　　　　　　　　WCM No.: 827.16116

# EXHIBIT A

**GENOVA BURNS LLC**
Rajiv D. Parikh (032462005)
Kathleen Barnett Einhorn (040161992)
494 Broad Street
Newark, New Jersey 07102
Tel.: (973) 533-0777
rparikh@genovaburns.com
keinhorn@genovaburns.com

**MORGAN & MORGAN**
John A. Yanchunis (*pro hac vice* to be filed)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com

*Attorneys for Plaintiffs Atlas Data Privacy Corporation, Jane Doe-1, a law enforcement officer, Jane Doe-2, a law enforcement officer, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev and William Sullivan*

---

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN,<br><br>         Plaintiffs,<br>   v.<br><br>DELVEPOINT, LLC, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>         Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION, MORRIS COUNTY<br>DOCKET NO.: MRS-L-_____-24<br><br><u>**CIVIL ACTION**</u><br><br><br>**COMPLAINT** |

Plaintiffs Atlas Data Privacy Corporation ("Atlas") as the assignee of individuals who are

Covered Persons under Daniel's Law along with Jane Doe-1 (a law enforcement officer), Jane

Doe-2 (a law enforcement officer), Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick

Colligan, Peter Andreyev, and William Sullivan (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby submit this Complaint against Defendants and state as follows:

## INTRODUCTION

1.      In these tumultuous times, it is critical that the most sensitive personal information of those who serve the public be protected from unwarranted disclosure.  As set forth below, Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement officers, and prosecutors – and their families – with the right to prevent the disclosure of their home addresses and unpublished home telephone numbers, and to enforce those rights against uncooperative profit-seeking data brokers.

2.      This complaint seeks to protect those important rights, against companies brokering data and choosing profit and personal gain over a critical public interest and the unequivocal mandate of the law.  Companies in the business of disclosing this protected information have avoided accountability for far too long, proffering such information, including home addresses and unpublished home telephone numbers, without sufficient regard for the risks and consequences imposed upon individuals who serve critical judicial and law enforcement roles.

3.      The Legislature and Governor unanimously agree that the basic safety of those who serve – and their families – must be assured.  Here, not only do the data brokers wantonly and repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of those who serve.  Our judges, law enforcement officers and prosecutors should receive the full measure of protection afforded to them under the same laws they enforce for the safety of all citizens.

4.      With this action, Plaintiffs seek to enforce the important rights granted to judges, law enforcement officers, and prosecutors under Daniel's Law.  Consistent with the statutory provisions, Atlas brings this action as an assignee for certain individuals, including many family

members of law enforcement officers and prosecutors.  Plaintiffs seek all available injunctive relief and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

## **BACKGROUND**

### **Passage of Daniel's Law in New Jersey**

5.      In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was shot dead by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just age 20 and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect his parents.  By the time his mother, a Judge, came to the door to check on what happened, the killer was gone.  But her husband was critically wounded, and Daniel tragically died from the gunshot.

6.      During the investigation, the perpetrator was found to have certain political and personal grievances against the Judge, and went to their home that day intending to kill her. Instead, he murdered the Judge's son and almost succeeded in killing her husband as well. Investigators eventually connected this attack with another shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman.  Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to what was pending before Daniel's mother.

7.      Critically, the gunman was able to find the home addresses of both of his murder victims through the various people finder resources available on the internet,[1] the same kind of data broker services at issue in this case.

---

[1] https://www.cbsnews.com/news/esther-salas-son-murder-roy-den-hollander-48-hours/.

**New Jersey Passes Daniel's Law in 2020**

8.      In response to the shooting of Daniel, New Jersey enacted Daniel's Law within a few months, in November 2020 (P.L. 2020, c. 125 *codified in* <u>N.J.S.A.</u> 47:1A-1, et seq. and <u>N.J.S.A</u> 56:8-166.1), which prohibits online data brokers from selling, publishing, and distributing the name and address of current and former judges, law enforcement officers, and prosecutors and their eligible family members (i.e., "covered persons"), upon any written request by the covered person.  Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of Judges and prosecutors.

9.      Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers.  Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."  Data brokers must cease disclosure of this protected information within 10 business days of receiving a nondisclosure request from a covered person.

**Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022**

10.      Similar to the actions taken by the State of New Jersey, federal judges such as U.S. Supreme Court Chief Justice John G. Roberts Jr. proposed and supported a federal version of Daniel's Law.  The Chief Justice was quoted stating, "[t]he law requires every judge to swear an

oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety … [a] judicial system cannot and should not live in fear."[2]

11.     The federal bill, which had broad bipartisan support in both the House and Senate, protected judges' personally identifiable information from resale by data brokers.  It allowed federal judges to redact their personal information displayed on federal government internet sites.

12.     The U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached,[3] and it was signed by President Biden.[4]

### Violence Against Police Officers and Judges Has Not Stopped

13.     Judges, law enforcement officers, and prosecutors put their lives on the line every day, which is clearly exhibited by numerous horrific stories of violence beyond the story of the murder of Daniel Anderl.  For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers and their 10-day old infant.  That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.[5]

14.     More recently, another perpetrator hunted and killed in cold blood a Maryland Judge, after a child custody ruling.[6]  The killing followed that of a Wisconsin Judge in 2022, where the perpetrator killed the retired Judge out of spite for his handling of a criminal case in 2005.[7]

---

[2] https://www.washingtonpost.com/politics/2022/12/31/supreme-court-roberts-leak-report/.

[3] https://www.uscourts.gov/news/2022/12/16/congress-passes-daniel-anderl-judicial-security-and-privacy-act.

[4] https://www.nj.com/politics/2022/12/biden-signs-defense-policy-bill-that-remembers-3-new-jerseyans.html.

[5] Shooters Open Fire On Home Of New Jersey Police Officers In 'Targeted Attack,' Chief Says (forbes.com).

[6] Judge Andrew Wilkinson: Suspect still on the run after killing a judge at his home in a 'targeted attack' following a child custody ruling, sheriff says | CNN.

[7] Former Judge John Roemer was killed in his Wisconsin home in a targeted attack, officials say | CNN.

## **THE PARTIES**

### **The Individual Plaintiffs**

15.     Plaintiff JANE DOE-1, whose name has been anonymized for safety reasons, is a decorated veteran police officer working in Northern New Jersey.  Between 2021 and 2022, Officer Doe-1 participated in a task force that targeted a major criminal organization operating in the state.  Her efforts ultimately led to the arrest and prosecution of a member of the organization's leadership, an individual with an extensive criminal history including threats of violence.  In the subsequent investigation, digital devices recovered from the organization's leadership were analyzed and photographs of Officer Doe-1's personal residence were identified.  Officer Doe-1 lives in the home with her spouse and their young child.  Evidence recovered in the investigation included night-time photography of the young child's bedroom and playroom windows, with the light on while the child was playing inside.  Further investigation revealed that the criminal organization's leadership had hired a private investigator who searched online data broker websites to obtain the officer's home address.  Having identified her home address, text messages confirmed that they had initiated surveillance and were tracking Officer Doe-1's movements to and from her home, immediately prior to the task force initiating arrests.

16.     Plaintiff JANE DOE-2, whose name has been anonymized for safety reasons, is a veteran correctional police officer who lives in Northern New Jersey with her husband and two young children.  Earlier in her career, Officer Doe-2 was the subject of a death threat from a hostile inmate.  The inmate stated that they intended to kill Officer Doe-2, and further implied that they would rely upon a particular private investigator to track down Officer Doe-2's home address to facilitate the murder.  This death threat was investigated and considered credible enough to result in a successful criminal prosecution.  Part of Officer Doe-2's current duties include working in her

correctional facility's law library, where inmates have access to the Internet including online data broker websites and services. Recently Officer Doe-2 and her coworkers discovered a note left behind by an inmate which included the full name and home address of a young female member of the jail's administrative staff. The most effective ways to safeguard the security and privacy of their home addresses - for their own safety and that of their family members - is a frequent topic of discussion and concern among the correctional police officers working at Officer Doe-2's facility.

17.   Plaintiff Officer EDWIN MALDONADO joined the Plainfield, New Jersey police department as a patrol officer in 2000. After a few months on the job, he was assigned to street crimes, where he excelled at field work. In 2005, he became a Detective with Plainfield's major crimes unit and joined a Federal task force targeting the Mara Salvatrucha-13 (MS-13) gang in New Jersey. He worked with the task force for the next two years. During that time period, he received multiple credible death threats from MS-13 members. Detective Maldonado did not believe he would be able to safeguard his home address while living in Plainfield and relocated his family to a remote location from which he commuted to work. In 2009, because his relocation effort had been successful and MS-13 could not locate his new home address, gang members targeted Detective Maldonado's mother instead. They intended to burn down her building with her inside, but set fire to an adjacent building by mistake. Phone calls between MS-13 members discussing the premeditated murder of Detective Maldonado and his family, and the premeditated murder of Detective Maldonado's mother, were intercepted by jail wiretaps. Later in multiple criminal trials, evidence was entered into the record regarding these intercepted conversations and premeditated murders, contributing to numerous successful prosecutions.

18.     Plaintiffs Sergeant SCOTT MALONEY ("Sergeant Maloney") and Officer JUSTYNA MALONEY ("Officer Maloney") are husband and wife, both veteran police officers currently serving with the Rahway, New Jersey Police Department.  They live together in New Jersey with their two young children.  In April of 2023, Officer Maloney responded to a routine call of a suspicious individual outside the Motor Vehicle Commission in Rahway.  The individual was an online content creator who often solicits police contact and then films himself debating constitutional rights with the responding officers.  A subset of the content creator's audience is vocally anti-police and videos posted to his social media channel have historically been the source of harassment and intimidation campaigns directed at the officers involved.  In this case, Officer Maloney and several other responding officers were filmed discussing a number of legal issues with the content creator, including whether or not the content creator was required to take his hands out of his pockets to show that he was unarmed.  Overall, the encounter was routine and ended uneventfully.

19.     The resulting video footage was selectively edited and posted to YouTube.  Almost immediately upon the video being posted, Officer Maloney was targeted by followers of the channel and other individuals who viewed the video.  Sergeant Maloney was quickly identified by viewers as Officer Maloney's husband, and became a target himself, due to their relationship as a married couple and his own status as a police officer.  Web links to data broker websites publicly disclosing the Maloney family's home address and unpublished home telephone numbers were posted along with explicit death threats and calls for violence, resulting in dozens of threatening phone calls and text messages.

20.     One of the text messages sent to Sergeant Maloney demanded money and stated that if Sergeant Maloney did not comply then his family would "pay in blood."  The unknown

messenger went on to state that they knew where the Maloneys lived and sent the full name and home address of one of the Maloneys' nearby relatives as proof of the messenger's ability to gather sensitive personal information.  Sergeant Maloney refused to comply with any demands.  He then received a video of three individuals in ski masks armed with handguns and assault rifles repeating the extortion demand.  In part of the video, a masked individual points a rifle at the camera and tells Sergeant Maloney that his family is "going to get [their] heads cut off."

21.   Several weeks later, one of the Maloneys' neighbors observed two suspicious looking individuals in ski masks parked one block away from the home and alerted police. Responding officers arrested two men - who were armed - for unlawful possession of a firearm. Video surveillance captured by nearby houses shows the two men circling the Maloneys' house immediately prior to their arrest.  Officer Maloney and her two young children were at home at the time.

22.   Plaintiff Detective PATRICK COLLIGAN is a 32-year veteran of the Franklin Township police department in Somerset, New Jersey.  Since 2014, Detective Colligan has served as the President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state.  During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service.  The seriousness of certain threats necessitated the installation of a surveillance camera system and alarm system, and training for his spouse and children about how to respond in the event of an attack on their home.

23.   Plaintiff Officer PETER ANDREYEV is a 32-year veteran of the Point Pleasant, New Jersey police department.   Officer Andreyev currently services as the Executive Vice President of the New Jersey State Policemen's Benevolent Association, representing more than

33,000 active law enforcement officers throughout the state. During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. Officer Andreyev has counseled many other officers who have been the target of violent threats on ways to protect themselves and their family members from harm. whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

24.    Plaintiff Officer WILLIAM SULLIVAN is an 18-year veteran of the New Jersey Department of Corrections. Since 2020, Officer Sullivan has served as the President of New Jersey PBA Local 105, the labor union representing thousands of correctional police officers from the New Jersey Department of Corrections, the Juvenile Justice Commission, and State Parole. During the course of his law enforcement career, he has received numerous threats of violence directed at him and his family as a result of his public service. Inmates incarcerated within New Jersey's state prisons frequently attempt to discover the protected information of correctional officers working in their facility. These attempts and the risks posed by such information being accessible on the Internet is a frequent topic of discussion and concern among correctional officers and their family members. Officer Sullivan has counseled many officers whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

**Plaintiff Atlas and its Assignors**

25.    Plaintiff ATLAS DATA PRIVACY CORPORATION is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

10

26.     As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 16,257 individuals who are all "covered persons" under Daniel's Law (together, the "Covered Persons"), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors.

27.     The Covered Persons include individuals who reside, work or had previously resided or worked in New Jersey, and qualify as "covered persons" as that term is defined under Daniel's Law, each of whom have claims against Defendants for failing to comply with Daniel's Law.

28.     As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or re-disclosing on the Internet or otherwise making available their protected information on one or more of Defendants' websites or through other methods of disclosure.

29.     Defendants have not complied with the law by ceasing the disclosure or re-disclosure on the Internet or the otherwise making available of protected information as required under Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs) as required by the law.

30.     In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas.

31.     Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other covered persons.  Atlas works with and provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New

Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, was to increase the safety and well-being of their members and associated households by helping those members to understand and assert the rights provided to them by the law.

32.     Upon signing up for Atlas, a law enforcement officer or other Covered Person is asked a series of questions to collect required personal information and qualify their eligibility as a covered person under Daniel's Law.  Once eligibility is confirmed, they are shown a page explaining how the Atlas platform works:

## How Atlas Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your home address or phone number. Atlas provides you with tools and services to help make the process more efficient.

1  **We identify** data brokers that may be disclosing your personal information. As of January 2024, our system tracks over 1,000 data brokers who operate in the United States.

2  **You select** the data brokers to whom you want to send takedown notices. We have lists of data brokers that we recommend, in order to make the selection process easier and more efficient. Alternatively, you can select recipients individually.

3  **You review** takedown notice templates. AtlasMail provides you with templates for takedown notice emails.

4  **You send** takedown notices. Your Atlas service includes an AtlasMail email address. You can use this email address to send takedown notices. More information about AtlasMail will be on the next screen.

**Back**                                      **Next**

33.     AtlasMail is an email service operated by Atlas.  Upon signing up with Atlas, each law enforcement officer or other Covered Person receives their own AtlasMail account, with a

unique inbox address (e.g. john.doe23@atlasmail.com) for their personal use.  A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:



34.     Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of Atlas as a platform and AtlasMail as an email service, the law enforcement officer or other Covered Person is then presented with a page on which they can review their home addresses and unpublished home telephone numbers, a takedown notice template, and a recommended list of data brokers to send notices to.  On this page the law enforcement officer or other Covered Person can choose whether or not to send takedown notices.  If they choose not to send takedown notices to the recommended list, they can select

individual recipients at a later page (as shown in the example copied below).  Here, each of the Individual Plaintiffs and Covered Persons sent Defendants a takedown notice.



35.     Any reply or response back from a data broker to the law enforcement officer or other Covered Person is received and displayed in their AtlasMail inbox.  AtlasMail is a fully featured email service provider, and its users can reply, forward, or use their AtlasMail account as they would any other email account:





36.     With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law for those Covered Persons.  This lawsuit seeks to protect their privacy without unnecessarily putting those individuals in the spotlight.  Atlas will work with the Court and Defendants to implement a protective order to then provide Defendants with the assignments and other information for each of the Covered Persons.

**Defendants**

37.     Defendant DELVEPOINT, LLC is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

16

38.     Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due to what appears to be intentional efforts by data brokers to conceal the specific entities involved and responsible for the disclosure of data and information, and individuals responsible for Defendants failures to comply with the law.

39.     Defendants offer and engage in the disclosure of data and information through one or more websites or applications, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey.  Those websites include:

delvepoint.com

40.     In accordance with Defendants' business model, visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished home telephone number of the Individual Plaintiffs and Covered Persons).



41.     As the screenshot above shows, visitors, users, or customers can not only obtain

the protected information of the Individual Plaintiffs and Covered Persons but also the protected

information of their family members.

42.     Daniel's Law was passed to protect those who serve from the disclosure of this protected information by such services, which disclose such information of the Individual Plaintiffs and Covered Persons for their own commercial interests, without sufficient regard to the risks and consequences imposed on individuals.

## JURISDICTION AND VENUE

43.     This Court has jurisdiction because the parties reside and/or conduct business in New Jersey, along with the Covered Persons, and the unlawful actions complained of herein occurred in New Jersey.

44.     Venue is proper pursuant to R. 4:3-2, in that Morris County is the county in which one or more of the parties and/or Covered Persons reside and/or conduct business.  In addition, many of the events giving rise to this action occurred in this County.

## FACTS COMMON TO ALL COUNTS

45.     As set forth above, New Jersey enacted Daniel's Law in November 2020 (P.L. 2020, c. 125 *codified as* N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1).

46.     Daniel's Law prohibits data brokers from disclosing or re-disclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

47.     Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or re-disclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

48.     This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person.  Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver,

transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

49.    Daniel's Law was amended in 2023, as P.L. 2023, c. 113.  The amendment was passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023.

50.    Certain provisions of the amended law, including changes to <u>N.J.S.A.</u> 56:8-166.1, went into effect immediately.

51.    As of July 20, 2023, Daniel's Law as codified in <u>N.J.S.A.</u> 56:8-166.1 provided:[8]

> 3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.
>
> b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person, or the covered person's assignee, who may bring a civil action in the Superior Court.
>
> c. The court shall award:
>
>> (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;
>>
>> (2) punitive damages upon proof of willful or reckless disregard of the law;
>>
>> (3) reasonable attorney's fees and other litigation costs reasonably incurred; and
>>
>> (4) any other preliminary and equitable relief as the court determines to be appropriate.
>
> d.  For the purposes of this section:
>
>> …"Disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer, and shall include

---

[8] https://pub.njleg.state.nj.us/Bills/2022/PL23/113_.PDF

making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

52.    Starting on or about January 1, 2024, each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure requests (via email) in accordance with Daniel's Law, using AtlasMail.

53.    For example, a true and correct copy of the email directly from Plaintiff Andreyev (with personal information redacted) is pasted here:

---

**Data Subject Request – Redaction/nondisclosure Request**

To        customerservice@delvepoint.com
From      Peter Andreyev <████████████@atlasmail.com>
Date      Wed, Jan 3, 2024 9:59 AM

Delvepoint
January 3, 2024

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:

Name: Peter Andreyev

Phone: ████████

Sincerely,
Peter Andreyev

---

54.     Defendants failed to cease the disclosure or re-disclosure on the Internet or the otherwise making available of the protected information of the Individuals Plaintiffs and Covered Persons within the time period required by Daniel's Law.

55.     Even as of the date of this filing, Defendants still refuse to comply with Daniel's Law.  Protected information of the Individual Plaintiffs and those Covered Persons who assigned Atlas their Daniel's Law claims against Defendants remains available from Defendants using Defendants' search tools or other means of disclosure.

56.     All of the Covered Persons who sent their nondisclosure requests to Defendants (not including the Individual Plaintiffs) have assigned their claims against Defendants to Atlas.

57.     The Individual Plaintiffs and Atlas hereby assert claims against Defendants based on their violation of Daniel's Law and continuing refusal to comply with that law.

## COUNT ONE

### (Daniel's Law)

58.     The allegations of the Complaint set forth above are included herein as if set forth at length.

59.     The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or re-disclosure on the Internet or wherever Defendants otherwise made it available.

60.     Defendants had an obligation under Daniel's Law to comply with the request within ten (10) business days.

61.     As of the date of this filing, Defendants still refuse to comply with Daniel's Law. The protected information (including home addresses and/or unpublished home telephone

numbers) of the Individual Plaintiffs and the Covered Persons remains "available or viewable within a searchable list or database" or otherwise made available.

62.    Defendants did not cease the disclosure or re-disclosure on the Internet or the otherwise making available of information as required under Daniel's Law, and their failure in doing so each constitute a separate violation under the law.

63.    As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request all available relief.

64.    As of the date of this filing, Defendants still refuse to comply with Daniel's Law. The protected information of the Individual Plaintiffs and the Covered Persons remains disclosed or otherwise made available despite proper requests for nondisclosure in violation of Daniel's Law. As such, Plaintiffs request that the Court enter all appropriate legal and equitable relief.

WHEREFORE, Plaintiffs request that Judgment be entered against Defendants as follows:

A. Ordering that Defendants immediately comply with Daniel's Law, and cease the disclosure of the Individuals Plaintiffs' and the Covered Persons' names, home addresses, and unpublished home telephone numbers wherever disclosed or re-disclosed on the Internet or otherwise made available;

B. Awarding actual damages, not less than liquidated damages under Daniel's Law, at "$1,000 for each violation";

C. Awarding an additional amount in punitive damages, to be determined by the Court, for "willful noncompliance" as allowed under Daniel's Law;

D. Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

E. Ordering injunctive relief requiring that Defendants comply with Daniel's Law, and remove the Individual Plaintiffs' and the Covered Persons' protected information wherever disclosed;

F. Entering equitable or other permanent injunctive relief requiring Defendants to comply with Daniel's law, including the appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law; and

G. Awarding such other and further relief against Defendants as the Court deems equitable and just.

Respectfully Submitted,

**GENOVA BURNS LLC**

Dated: February 7, 2024

By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh
Kathleen Barnett Einhorn
494 Broad Street
Newark, New Jersey 07102
Tel: (973) 533-0777

*Attorneys for Plaintiffs*

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
John A. Yanchunis
Ryan J. McGee
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@ForThePeople.com
rmcgee@ForThePeople.com

(*pro hac vice motions to be filed*)

## DESIGNATION OF TRIAL COUNSEL

The Court is advised that pursuant to New Jersey Court Rules 4:5-1(c) and 4:25-4, Rajiv D. Parikh, Esq. is hereby designated as trial counsel for Plaintiffs in this matter.

**GENOVA BURNS LLC**

Dated: February 7, 2024

By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh, Esq.

## CERTIFICATION PURSUANT TO RULE 4:5-1

Pursuant to R. 4:5-1, it is hereby stated that the matter in controversy between the parties hereto is not the subject of any other action pending in any other Court or of a pending arbitration proceeding to the best of my knowledge and belief.  Also, to the best of my knowledge and belief, no other action or arbitration proceeding between the parties hereto is contemplated.  Further, other than the parties set forth in this pleading and the previous pleadings, if any, at the present time we know of no other parties that should be joined in the within action.

**GENOVA BURNS LLC**

Dated: February 7, 2024

By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh, Esq.

## CERTIFICATION PURSUANT TO RULE 1:38-7(b)

Pursuant to Rule 1:38-7(b), it is hereby stated that all confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future.

**GENOVA BURNS LLC**

Dated: February 7, 2024

By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh, Esq.

25

# Civil Case Information Statement

## Case Details: MORRIS | Civil Part Docket# L-000244-24

**Case Caption:** ATLAS DATA PRIVACY C ORPORATIO  VS DELVEPOINT, LL

**Case Initiation Date:** 02/07/2024

**Attorney Name:** RAJIV D PARIKH

**Firm Name:** GENOVA BURNS LLC

**Address:** 494 BROAD ST 6TH FL

NEWARK NJ 07102

**Phone:** 9735330777

**Name of Party:** PLAINTIFF : ATLAS DATA PRIVACY CORPORATION

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** OTHER Daniel's Law

**Document Type:** Complaint

**Jury Demand:** NONE

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: ATLAS DATA PRIVACY CORPORATION?** NO

**Are sexual abuse claims alleged by: JANE DOE 1?** NO

**Are sexual abuse claims alleged by: JANE DOE 2?** NO

**Are sexual abuse claims alleged by: EDWIN MALDONADO?** NO

**Are sexual abuse claims alleged by: JUSTYNA MALONEY?** NO

**Are sexual abuse claims alleged by: SCOTT MALONEY?** NO

**Are sexual abuse claims alleged by: PETER ANDREYEV?** NO

**Are sexual abuse claims alleged by: PATRICK COLLIGAN?** NO

**Are sexual abuse claims alleged by: WILLIAM SULLIVAN?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
        **If yes, please identify the requested accommodation:**


**Will an interpreter be needed?** NO
        **If yes, for what language:**


**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO
**Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

02/07/2024                                                                      /s/ RAJIV D PARIKH
Dated                                                                               Signed

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, JANE DOE-2, a law enforcement officer, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN : : : : : : : : : : | Civil Action No. 24-cv-04096-CCC-ESK **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |
| PLAINTIFFS, : : | |
| vs. : : | |
| DELVEPOINT, LLC, RICHARD ROES 1-10; fictitious names of unknown individuals and and ABC COMPANIES 1--0, fictitious names of unknown entities, : : : : : | |
| DEFENDANTS. : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DELVEPOINT, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

On The Brief
Robert J. Cosgrove

# TABLE OF CONTENTS

**Introduction and Alleged Facts** ...................................................................**5**

    Daniels Law...............................................................................................5

    The Atlas Lawsuit .....................................................................................5

**Argument** ...................................................................................................**6**

    Standard of Review for Motion to Dismiss...............................................6

    Delvepoint's Collection and Dissemination of Information is "Speech" Within the Meaning of the First Amendment...................................................................................7

    As Commercial Speech, Daniel's Law Deprives Delvepoint of Due Process Because it is More Extensive than Necessary and Does Not Provide a Verification Mechanism. .....................8

        *Daniel's Law as Written is More Extensive than Necessary to Serve New Jersey's Interest in Protecting "Covered Persons".* .........................................................10

        *Daniels Law as Written Violates Due Process Because it Does Not Provide Delvepoint a Verification Mechanism to Ensure Compliance and Avoid Civil Penalties.* ................12

**Conclusion** ..............................................................................................**15**

# TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Bartnicki v. Vopper*, 532 U.S. 514 (2001) ..................................................... 7

Bell Atl. Corp. v. Twombly, 550 U.S. 544, (2007) ........................................ 6

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,

    447 U.S. 557 (1980) ............................................................... 8, 9, 10

*Florida Star v. B.J. F.*, 491 U.S. 524 (1989)................................................. 7

*Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001) ................................. 9

*New York Times Co. v. United States*, 403 U.S. 713 (1971) ......................................... 7

*Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995).............................................10,11

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, (1984) ..................................... 7

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011)......................................... 7, 8

*The Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564 (1972) ............................. 9

## Federal Cases

*Alvin v. Suzuki*, 227 F.3d 107 (3rd Cir.2000) ....................................... 12, 13

*Am. Future Sys., Inc. v. Pennsylvania State Univ.,* 688 F.2d 907 (3rd Cir. 1982).......................... 9

*Greater Philadelphia Chamber of Com. v. City of Philadelphia,*

   949 F.3d 116 (3rd Cir. 2020) ........................................................ 8, 9

*Hill v. Borough of Kutztown*, 455 F.3d 225 (3rd Cir. 2006) ......................... 12

*N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297 (3rd Cir.

   2014).......................................................................... 6

*Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892 (3d Cir. 2021) ..................... 6

*Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128 (3rd Cir. 2010) ............... 12

## Statutes

N.J.S.A 56:8:-166.1.................................................................. 5, 13, 15

N.J.S.A. 47:1A-1.1.................................................................. 5

## Rules

Federal Rule of Civil Procedure 12(b)(6) ................................................... 5, 6

## Constitutional Provisions

U.S. Const. amend. XIV ................................................................................................. 9

U.S. Const. amend. I ................................................................................................. 9, 12

## I.    INTRODUCTION AND ALLEGED FACTS

Defendant Delvepoint LLC "Delvepoint" moves to dismiss Plaintiff Atlas Data Privacy Corporation's ("Atlas") Complaint under Federal Rule of Civil Procedure 12(b)(6). In brief, Delvepoint submits that, while motivated by good and proper intentions, Daniel's Law, as applied to Delvepoint, is an unconstitutional infringement on Delvepoint's commercial free speech and due process rights.

### a.  Daniels Law

"Daniel's Law", codified in N.J.S.A. 47:1A-1.1 and effective as of July 20, 2023, was passed in response to the fatal and tragic shooting of Daniel Anderl, the son of a federal judge whose home address was accessed via the internet. Under N.J.S.A 56:8:-166.1, New Jersey courts may find civil liability against a person, business, or association that discloses "on the internet or otherwise make available" the home address or telephone number of any "covered person". N.J.S.A 56:8:-166.1 further states that businesses, upon a written request by an authorized person seeking to prohibit disclosure of such information of a covered person, have ten (10) business days to remove such information. A covered person under Daniel's Law is, in part, an active or retired judicial officer, law enforcement officer, child protective investigator, or prosecutor, as well as "any immediate family member residing in the same household" as the person above.

Courts may award liquidated damages of $1,000 per violation of Daniel's Law, along with punitive damages and reasonable attorney's fees and litigation costs.

### b.  The Atlas Lawsuit

On February 24, 2024, Atlas, as an assignee of alleged covered persons under Daniel's Law, filed a complaint and summons in the Superior Court of New Jersey. The crux of Atlas' complaint is that Delvepoint violated Daniels Law (N.J.S.A 56:8:-166.1).   Specifically, Atlas

alleges that on or about January 1, 2023, approximately 16, 257 covered persons, through Atlas, transmitted a written notice to Delvepoint requesting Delvepoint to cease disclosure of their home address and/or unpublished telephone number, and further that Delvepoint refused to do so. *See* **Exhibit A**, Complaint, ¶ 59-61. The plaintiffs are allegedly active or retired New Jersey police officers who have experienced threats to themselves or their families by way of third-party access to protected information. The notifications given to Delvepoint and referenced in the complaint do not include any information that establishes that the alleged covered persons are, in fact, covered persons.

The complaint further alleges Delvepoint is an entity that discloses or re-discloses on the internet or otherwise makes available the home addresses and unpublished home telephone numbers of covered persons. *See* Complaint at ¶ 37.

Since January 1, 2024, Atlas has filed over one hundred similar lawsuits in Bergen, Mercer, Middlesex, Monmouth, and Morris Counties alleging statutory violations of Daniel's law against numerous defendants based on the same basic set of facts.

## II. ARGUMENT

### a. Standard of Review for Motion to Dismiss.

To survive a Motion to Dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Reasonable inferences are made in the plaintiff's favor. *N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014). However, threadbare causes of action and legal conclusions are disregarded and may be dismissed. *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021).

b.      **Delvepoint's Collection and Dissemination of Information Is "Speech" Within the Meaning of the First Amendment.**

An individual's right to speak is implicated when information he or she possesses is subjected to "restraints on the way in which the information might be used" or disseminated. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32, (1984); *see also Bartnicki v. Vopper*, 532 U.S. 514, 527, (2001); *Florida Star v. B.J. F.*, 491 U.S. 524 (1989); *New York Times Co. v. United States*, 403 U.S. 713 (1971) (per curiam). The creation and dissemination of information is speech within the meaning of the First Amendment. *See*, e.g., *Bartnicki v. Vopper*, 532 US 514 at 527 ("[I]f the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category, as distinct from the category of expressive conduct" (some internal quotation marks omitted). "Facts, after all, are the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011).

In *Sorrell*, the Supreme Court held that a Vermont law restricting the sale, disclosure, and use of pharmacy records revealing prescribing practices of individual doctors was an unconstitutional, content and speaker-based burden on protected expression. *See Id*. at 571. In *Sorerell*, as is common practice and in accordance with federal law, pharmacies would receive prescriber-identifying information when processing prescriptions. *See Id*. at 558. The pharmacies would then sell this information to "data miners," which would analyze the information to produce reports on prescriber behavior. *See Id*. Various Vermont data miners that collected and re-sold prescriber-identifying information sought declaratory and injunctive relief against Vermont contending that the statute violated their rights under the Free Speech Clause of the First Amendment because it burdened their use of sharing information without adequate justification. *See Id.*

In its defense, Vermont tried to argue that the statute regulated "not speech, but simply access to information," seeking an exception to the rule that information is speech. *See Id.* 564 U.S. 552 at 568; 571. The State further asserted that the sales, use, and transfer of such information was conduct, and therefore not "speech" within the meaning of the First Amendment. *See Id.* at 570. The Supreme Court declined to grant such an exception and instead held that the data miners' collection and dissemination of prescriber-identifying information was "speech" protected by the First Amendment in accordance with precedent. *See Id.* at 570 -71.

Here, like the data miners in *Sorrell*, Delvepoint allegedly discloses certain information to third parties. As the Court held in *Sorrell*, Delvepoint's alleged collection and dissemination of the identifying information is clearly "speech" within the meaning of the First Amendment. Like the Vermont statute, Daniel's Law operates to restrain the way in which Delvepoint may disseminate said identifying information, thereby making the restrain a depravation of Delvepoint's First Amendment rights.

### c. Daniel's Law Deprives Delvepoint of Due Process Because It Is More Extensive Than Necessary and Does Not Provide a Verification Mechanism.

Commercial speech is understood to relate solely to the economic interests of the speaker. *See Greater Philadelphia Chamber of Com. v. City of Philadelphia*, 949 F.3d 116, 137 (3d Cir. 2020). Commercial speech, while afforded less constitutional protection than other traditional forms of expression, is still granted a level of protection. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 563 (1980). The Supreme Court in *Central Hudson* identified a four-prong test for commercial speech protections. *See Id.* at 566. In determining whether a commercial speech regulation is permissible, the court must determine whether:

(1) the speech concerns lawful activity and is not misleading; (2) the asserted governmental interest is substantial; (3) the regulation directly advances the

governmental interest asserted; and (4) whether it is not more extensive than is necessary to serve that interest.

*Greater Philadelphia Chamber of Com,* 949 F.3d at 138, (citing *Cent. Hudson* 447 U.S. at 562-63(1980)). The final two elements of *Central Hudon*, by their nature, are intertwined and consider whether statute involves a "fit" between the legislature's ends and the means employed in the statute to achieve those ends. *See Cent. Hudson* 447 U.S at 566. Significantly, "not more restrictive than is necessary" is distinct from the "least restrictive alternative" test employed in a strict scrutiny analysis. *See Greater Philadelphia Chamber of Com* 949 F.3d at 140; *See also: Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 556 (2001)(" [I]t [is] clear that 'the least restrictive means' is not the standard; instead, the case law requires a reasonable 'fit between the legislature's ends and the means chosen to accomplish those ends, ... a means narrowly tailored to achieve the desired objective'").

Furthermore, under the Fourteenth Amendment, a state may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. XIV. Free speech, including commercial speech, is a liberty interest granted protection by the First Amendment. U.S. Const. amend. I.; *See also Am. Future Sys., Inc. v. Pennsylvania State Univ.,* 688 F.2d 907, 915 (3d Cir. 1982) (affirming free speech is a form of liberty interest). Therefore, when free speech, including commercial speech, is restricted by statute, the deprived party retains its right to be afforded due process. *See The Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 570 (1972).

Here, the home addresses and phone numbers of "covered persons" disclosed by Delvepoint is commercial speech afforded protection under the First Amendment. Delvepoint explicitly acknowledges that there is no question that the State of New Jersey has a substantial interest in protecting its present and former judges, prosecutors, law enforcement officers, child

protection investigators, and their immediate family members from the sort of harm and tragedy experienced by Judge Anderl and her son, Daniel. Delvepoint also does not dispute that Daniel's Law advances New Jersey's interest in providing protection by allowing "covered persons" as defined in the statute to request a business to remove otherwise lawfully obtained data and information -- specifically a covered person's home address and unpublished home telephone number, from the internet or where otherwise available.

However, Daniel's Law, as currently written, is "more extensive than necessary" to serve New Jersey's interest because it allows for any person, through any means, to request removal of their information without any form of verification mechanism. Additionally, Daniel's Law as written deprives Delvepoint of its due process rights because it restricts commercial speech without providing Delvepoint with a verification mechanism by which to comply with the statute prior to civil penalties being exacted against it.

### i. Daniel's Law as Written Is More Extensive Than Necessary to Serve New Jersey's Interest in Protecting "Covered Persons".

In determining whether a regulation on commercial speech is "more extensive than necessary" to serve a government interest, courts consider the "fit" between the government's ends and the means used to accomplish those ends. *See Rubin v. Coors Brewing Co*., 514 U.S. 476, 486 (1995). Courts are likely to find that a regulation on commercial speech is more extensive than necessary if there are alternative, available options in which the government's asserted interest could be achieved in a manner less intrusive to First Amendment rights. *See Id.*; *Cent. Hudson*, 447 U.S. at 569-72.

In *Central Hudson*, the Court found that a complete ban on promotional advertising by an electric utility would not effectively impact the government's interest in energy conservation, and therefore the regulation was deemed to be more extensive than necessary. *See Cent. Hudson*, 447

U.S. at 571 – 72. In *Rubin*, the Court found that a regulation prohibiting the disclosure of alcohol content on beer labels or in advertising was more extensive than necessary because there were several alternatives available which would better achieve the government's stated goal of suppressing the threat of "strength wars" among brewers who seek to compete in the marketplace based on potency of beers, including directly limiting the alcohol content of beers or limiting the labeling ban to only malt liquors. *See Rubin*, 514 U.S. 476 at 490 – 91.

Here, as in *Rubin* and *Central Hudson*, Daniel's Law is more extensive than necessary to achieve New Jersey's interest in protecting "covered persons" under Daniel's law due to the nature of the information itself and other available options which more adequately address New Jersey's valid concerns. Delvepoint reasserts that it does not deny the legitimate state interest by New Jersey to protect its judges, officers, and their families under Daniel's Law. However, given the nature of the information itself, Daniel's Law fails to serve New Jersey's interests and unduly burdens protected commercial speech.

Information such as phone numbers and home addresses are public information that can be found on countless sources of the internet. Once such information is published on the internet, it can be reasonably accessed from anywhere in the world, even once said information is reportedly "deleted." A single written notice to corporations like Delvepoint only removes that information from Delvepoint' s service alone; it does not extend to the other countless data collection agencies or public websites that may still publish such information. Furthermore, Delvepoint is at a disadvantage because there is no statutory mechanism to verify that the notices are in fact coming from "covered persons." Any person could theoretically submit a request to Delvepoint under the statute, and Delvepoint would, in turn, be required to adhere to comply with every one of those demands – regardless of whether the requestor was, in fact, a covered person. This would not only

take away from those actively seeking recourse under the statute as a "covered person," but would effectively chill Delvepoint's speech in its collection and dissemination of information. Therefore, as in *Central Hudson*, the statute fails to achieve New Jersey's interests while remaining unduly burdensome.

As discussed in more detail below, there are alternative options available which would more effectively serve New Jersey's interests in a manner less intrusive to Delvepoint and other data collectors' First Amendment rights. A less restrictive means could include implementing a statutory verification mechanism so Delvepoint could ensure that any mandated restriction in its dissemination of information actually serves New Jersey's interest in protecting verified and specific covered persons.

> ii. *Daniels Law as Written Violates Due Process Because it Does Not Provide Delvepoint a Verification Mechanism to Ensure Compliance and Avoid Civil Penalties.*

To show a statute violates procedural due process, a court must find that first, the existence of an interest encompassed by the Fourteenth Amendment's protection of life, liberty or property and second, the absence of procedures that otherwise provide due process of law. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006). As previously noted, free speech, including commercial speech, is a liberty interest granted protection by the First Amendment. U.S. Const. amend. I. Regarding procedures that provide due process of law, the court "examine[s] the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute". *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 138 (3d Cir. 2010). It is the duty of the deprived party to take advantage of the processes available "unless those processes are unavailable or patently inadequate". *Alvin v. Suzuki,* 227 F.3d 107, 110 (3d Cir.2000). For example in *Alvin,* the court rejected a tenured professor's procedural due process claims when he failed to follow grievance

procedures from the faculty handbook that would have allowed him to dispute a university's denial of his rights to inherit tenure. *See Id.* at 111. The court considered such grievance procedures as supporting the contention of finding the existence of adequate procedural due process. *Id.*

Here, Daniel's Law, through N.J.S.A 56:8-166.1, deprives Delvepoint of its liberty interest in protected commercial speech by requiring, upon written request, that Delvepoint not disclose the home address and phone number of "covered person[s]". Delvepoint reiterates that it does not deny the existence of a substantial government interest in protecting the information of Covered Persons, and that all Covered Persons are entitled to request removal of said information despite such requests impacting Delvepoint commercial speech rights.

An "authorized person" seeking to prohibit the disclosure of such information must specify in their written notice that the person or business remove that protected information "from the internet" or "where otherwise made available". Notably, the statute clearly remarks that only "authorized persons" may make such a request to a business to remove the prohibited material. Moreover, only "covered persons" are granted, under Daniel's Law, the right to have their home address or telephone number removed. Therefore, non-covered persons, i.e. those who are not current or retired judges, officers etc. or their immediate family members, may not provide written notice seeking non-disclosure of the same information.

Unlike *Alvin,* Delvepoint is unable to take advantage of the processes available to protect its First Amendment rights because Daniel's Law is silent on any verification mechanisms by which Delvepoint may certify that those submitting written requests are in fact covered and granted protections by the statute. Indeed, Delvepoint cannot argue that there are inadequate mechanisms because N.J.S.A 56:8-166.1 does not provide any mechanisms at all.

Atlas, in its complaint, provides the standard email language by which people may request their information be removed from Delvepoint's data amalgamation service.  The letter explicitly says:

> To Whom it May Concern,
>
> I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act). Pursuant to the Act and Section 3 of New Jersey P.L .2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:
>
> Name:
>
> Phone:
>
> Sincerely,
> [Name of Covered Person]

As seen above, the email contains no further information that could provide Delvepoint with proof or verification that the sender of the letter is in fact a "Covered Person". Instead, the letter expects Delvepoint to take the sender at their word alone that they are a "Covered Person" as defined under Daniel's Law and are therefore entitled to all protections and rights granted by the statute. N.J.S.A 56:8-166.1 is silent as to steps Delvepoint may take to confirm the accuracy of these claims or otherwise verify the identity of the sender. Even if such a request violates Daniel's Law, Delvepoint would have ten days following a written request by someone claiming to be a covered person to not disclose such information on the internet or else be subject to civil penalties. Therefore, the lack of verification procedures on the end of the person or business responding to a written request results in a deprivation of Delvepoint Due Process rights because Delvepoint cannot ensure, under the law as currently written, that the protected speech being removed is on behalf of a "Covered Person".

## III.     CONCLUSION

For the reasons stated above, this Honorable Court should dismiss the complaint and declare that the absence of a verification mechanism in the statute makes Daniel's Law an unconstitutional abridgement of commercial free speech and due process rights.

Respectfully submitted,

Dated:  Springfield, NJ
            March 25, 2024

WADE CLARK MULCAHY LLP

*/s/ Robert J. Cosgrove*

_____

By: Robert J. Cosgrove, Esq.
Attorneys for Defendant Delvepoint, LLC
955 South Springfield Avenue, Suite 100
Springfield, NJ 07081
267.665.0743
WCM No.: 827.16116

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, JANE DOE-2, a law enforcement officer, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN<br><br>       PLAINTIFFS,<br><br>vs.<br><br>DELVEPOINT, LLC, RICHARD ROES 1-10; fictitious names of unknown individuals and and ABC COMPANIES 1--0, fictitious names of unknown entitites,<br><br>       DEFENDANTS. | Civil Action No. 2:24-cv-04096-CCC-ESK<br><br>NOTICE OF MOTION TO DISMISS |

## <u>NOTICE OF DEFENDANT DELVEPOINT, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV.P 12(b)(6)</u>

PLEASE TAKE NOTICE, that upon the annexed Affirmation of Robert J. Cosgrove, the exhibits annexed thereto, Memorandum of Law, and all the proceedings and pleadings heretofore had herein, Defendant Delvepoint, LLC ("Delvepoint") will move this Honorable Court at the United States District Court for the District of New Jersey, before the Honorable Claire C. Cecchi, at the courthouse located at 50 Walnut Street, Newark, New Jersey, courtroom 5B, as scheduled by the Honorable Claire C. Cecchi for an order pursuant to Federal Rule of Civil Procedure 12(b)(6): a) dismissing Atlas Data Privacy Corporation's ("Atlas") Complaint because the absence of a verification procedure in the statute makes Daniel's Law an unconstitutional abridgement of commercial free speech and due process rights and b) granting such other, further and different relief as this Court deems just and proper.

PLEASE TAKE FURTHER NOTICE that answering papers, if any, must be served within

14 days of service of the within motion as prescribed by this Honorable Court.

Dated:  Springfield, NJ
        March 25, 2024

                                        Respectfully Submitted,

                                        WADE CLARK MULCAHY LLP

                                        */s/ Robert J. Cosgrove*

                                        _____
                                        Robert J. Cosgrove, Esq.
                                        Attorneys for Defendant Delvepoint, LLC
                                        955 South Springfield Avenue, Suite 100
                                        Springfield, NJ 07081
                                        267.665.0743
                                        WCM No.: 827.16116

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ATLAS DATA PRIVACY CORPORATION, as       :    Civil Action No. 2:24-cv-04096-CCC-ESK
assignee of individuals who are Covered    :
Persons, JANE DOE-1, a law enforcement     :
officer, JANE DOE-2, a law enforcement     :
officer, EDWIN MALDONADO, SCOTT            :
MALONEY, JUSTYNA MALONEY,                  :
PATRICK COLLIGAN, PETER ANDREYEV,          :
and WILLIAM SULLIVAN                       :
                                           :
          PLAINTIFFS,                      :
                                           :
vs.                                        :
                                           :
DELVEPOINT, LLC, RICHARD ROES 1-10;        :
fictitious names of unknown individuals and :
and ABC COMPANIES 1--0, fictitious names   :
of unknown entitites,

          DEFENDANTS.

## **ORDER**

AND NOW this _____ day of March, 2024, upon consideration of Defendant

DELVEPOINT LLC ("Delvepoint")'s Motion to Dismiss to Plaintiff ATLAS DATA PRIVACY

CORPORATION ("Atlas")'s Complaint, it is hereby ORDERED, JUDGED, and DECREED that

Delvepoint's Motion is GRANTED.

IT IS FURTHER ORDERED that, pursuant to Fed. R. Civ. P. 12(b)(6), Atlas's complaint

against Delvepoint is dismissed, with prejudice because the absence of a verification mechanism

in Daniel's Law makes its application to Delvepoint an unconstitutional abridgement of

commercial free speech and due process rights.

**BY THE COURT:**

_____

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, JANE DOE-2, a law enforcement officer, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN<br><br>　　　　PLAINTIFFS,<br><br>vs.<br><br>DELVEPOINT, LLC, RICHARD ROES 1-10; fictitious names of unknown individuals and and ABC COMPANIES 1--0, fictitious names of unknown entities,<br><br>　　　　DEFENDANTS. | Civil Action No. 24-cv-04096-CCC-ESK<br><br>**AFFIRMATION** |

## <u>PROOF OF SERVICE</u>

I hereby certify that a true and correct copy of ***Defendant Delvepoint, LLC's Motion to Dismiss*** was served upon the parties listed below this 23th day of March 2024 via ecf only:

| | |
|---|---|
| Rajiv D. Parikh, Esq.<br>Kathleen Barnett Einhorn, Esq.<br>Genova Burns LLC<br>494 Broad Street<br>Newark, NJ 07102<br>rparikh@genovaburns.com<br>keinhorn@genovaburns.com<br>*Attorneys for Plaintiff Atlas Data Privacy Corporation* | |

Dated:  Springfield, NJ
        March 25, 2024

                                        WADE CLARK MULCAHY LLP

                                        */s/ Jen Rajkowski*

                                        _____

                                        By:  Jen Rajkowski, Paralegal