UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, JANE DOE-2, a law enforcement officer, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN | : : : : : : : : : | Civil Action No. 1:24-cv-04096-HB |
| PLAINTIFFS, | : : | |
| vs. | : : | |
| DELVEPOINT, LLC, RICHARD ROES 1-10; fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities, | : : : : | |
| DEFENDANTS. | : : | |

**DELVEPOINT LLC'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL JURISIDITIONAL DISCOVERY**

ROBERT J. COSGROVE, ESQ.
rcosgrove@wcmlaw.com (E-Mail)
Attorney ID # 005222005
*Attorneys for Defendant Delvepoint, LLC*
Wade Clark Mulcahy LLP
955 South Springfield Avenue, Suite 100
Springfield, New Jersey 07081
(973) 258-1700
Our File No.: 827.16116

## TABLE OF CONTENTS

Table of Authorities....................................................................................................2

Introduction..............................................................................................................5

Factual Background...................................................................................................5

Procedural Background..............................................................................................7

Standard....................................................................................................................9

Argument.................................................................................................................10

    I.    The "Effects Test" Does Not Apply and The Complaint Falls Short of Stating a Prima Facie Case for Personal Jurisdiction....................................................10

        A.    The Effects Test Cannot Determine Personal Jurisdiction Over a Defendant Alleged to Have Violated Daniel's Law.............................12

        B.    The Complaint Does Not State a Prima Facie Case for Jurisdiction under the Applicable Purposeful Availment Test.................................17

    II.    Plaintiffs' Discovery Requests Seek information that Is Not Relevant to Determine Personal Jurisdiction Nor Proportional to that Need...................20

        A.    The Interrogatories for Which Plaintiffs Argue Insufficient Responses Have Been Provided Do Not Seek Information Relevant to the Applicable Test for Personal Jurisdiction And Are Overbroad..........21

        B.    The Requests for Production of Documents for Which Plaintiffs Argue Insufficient Responses Have Been Provided Do Not Seek Information Relevant to the Applicable Test for Personal Jurisdiction And Are Overbroad..............................................................................................28

Conclusion..............................................................................................................46

## TABLE OF AUTHORITES

### CASES

*Aakash Dalal v. Clearview AI, Inc.*, Civ. No. 24-10380, 2025 U.S. Dist. LEXIS 118674 (D.N.J. May 1, 2025).............................................................................................................24

*Atlas Data Privacy Corp. v. LexisNexis Risk*, BER-L-000875-24 (Law Div. June 6, 2025)............................................................................................................32, 40

*Beaton v. LG Chem, Ltd.*, No. 220-CV-06806BRMESK, 2021 WL 3828835, at *5 (D.N.J. Aug. 26, 2021)...........................................................................................................34

*Robinson v. Horizon Blue Cross-Blue Shield*, No. 12-cv-2981¸2013 U.S. Dist. LEXIS 180325 (D.N.J. Dec. 23, 2013).....................................................................................45

*Budget Blinds, Inc. v. White*, 536 F.3d 244, 264 (3d Cir. 2008)........................16, 36, 41

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)..........................................31

*Calder v. Jones*, 465 U.S. 783 (984)..........................................................................5, 11

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F. 3d 390, 401 (4th Cir. 2003)....................................................................................................................... 35, 37

*In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 668 (3d Cir. 2003)................................20

*Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 344 F.R.D. 207, 215 (D.N.J. 2023)...................28

*Democratic Nat'l Comm. v. Republican Nat'l Comm.*, No. 18-1215, 2019 WL 117555, at *2 (3d Cir. Jan. 7, 2019).........................................................................................................passim

*In re Diisocyanates Antitrust Litig.*, No. MC 18-1001, 2020 WL 7424975, at *1 (W.D. Pa. Dec. 18, 2020)...................................................................................................................20

*Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir.2010)....27

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351, 359 (2021)................passim

*Hankins v. Doubletree, LLC*, No. 19-cv-8698, 2022 WL 3013089 (D.N.J. July 29, 2022)...........19

*Hasson v. FullStory, Inc.*, 114 F.4th 181, 196 (3d Cir. 2024)................................passim

*Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021).....................................................19

*Hurley v. Cancun Playa Oasis Int'l*, No. 99-cv-574, 1999 WL 718556, at *3 (E.D. Pa. Aug. 31, 1999)....................................................................................................................19

*IMO Indus. v Keikert AG.*, 155 F.3d at 266 (3d. Cir. 1998)...........................................19

*Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984)..................................................46

*LaSala v. Marfin Popular Bank Public Co., Ltd.*, 410 Fed.Appx. 474, 478 (3d Cir.2011)....passim

*Mesadieu v. Martinez*, Civ. No. 18-842, 2023 U.S. Dist. LEXIS 70805 (D.N.J. Apr. 24, 2023)..............................................................................................................12, 27

*Mirarchi v. Seneca Specialty Ins. Co.*, 564 F. App'x 652, 655 (3d Cir. 2014)..............................10

*M.H. ex rel. C.H. v. Omegle.com LLC*, No. 20-cv-11294, 2021 WL 1050234, at *3 (D.N.J. Mar. 19, 2021)...............................................................................................................................18

*Newman v. N.C. Ins. Underwriting Ass'n*, No. 20-cv-1464, 2020 U.S. Dist. LEXIS 212387, (D.N.J. Nov. 9, 2020)......................................................................................................31, 40

*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 318 (3d Cir. 2007)..........................................42

*Pearson Educ., Inc. v. Chegg, Inc.*, No. CV 21-16866, 2023 WL 7489982, at *2 (D.N.J. Nov. 13, 2023)....................................................................................................................................10

*Remick v. Manfredy,* 238 F.3d 248, 258 (3d Cir. 2001)..................................................................12

*Rockwood Select Asset Fund XI v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014)....................................................................................................................................17

*Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 782 n.20 (3d Cir. 2018)....................................11

*Solano-Sanchez*, No. CV 19-4016, 2021 WL 229400.............................................................21, 22

*Takacs v. Union County,* 2009 WL 3048471, at *1 (D.N.J.2009).....................................................9

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir 2003).....................................11,18.
*United States v. Chazen*, No. 3:08-CV-2314 FLW DEA, 2019 WL 113722, at *2 (D.N.J. Jan. 4, 2019).......................................................................................................................................10

*Walden v. Fiore*, 571 U.S. 277, 290 (2014)...........................................................................17, 18

**STATUTES**
N.J.S.A. 56:8-166.1.....................................................................................................passim

**OTHER AUTHORITIES**
Black's Law Dictionary, *Intentional Tort* (12th ed. 2024)............................................................13

**RULES**
Fed. R. Civ. P. 26.................................................................................................9, 10, 11

L. Civ. R.  37.1(b)(1)...................................................................................................12

**INTRODUCTION**

Defendant Delvepoint LLC ("Delvepoint") respectfully submits this Opposition to Plaintiffs' Motion to Compel Jurisdictional Discovery. Plaintiffs' in their Motion maintain that they served jurisdictional discovery to establish personal jurisdiction over Delvepoint under the "effects test" established in *Calder v. Jones*, 465 U.S. 783 (984), as well as under the purposeful availment test. Delvepoint submits that its responses to Plaintiff's jurisdictional discovery are fully responsive to any interrogatories or requests for production of documents informing the applicable test for personal jurisdiction over Delvepoint. All of Delvepoint's objections are to interrogatories and requests for production of documents that, if not objected to, would not support personal jurisdiction over Delvepoint under the applicable test. In objecting to these interrogatories and requests for production of documents, Delvepoint has resisted Plaintiff's' attempt to engage in merits-based discovery in violation of the Court's order limiting discovery to the issue of personal jurisdiction.

**FACTUAL BACKGROUND**

The facts of this dispute as illustrated by Delvepoint's existing document production is that personal jurisdiction over it is not proper in New Jersey.

Delvepoint's responses to Plaintiffs' First Set of Interrogatories indicate throughout that personal jurisdiction over Delvepoint is lacking in New Jersey. For example, in response to Interrogatory 3, Delvepoint confirmed that "Delvepoint has not contracted with a contractor or vendor to market, advertise, solicit, or offer Delvepoint.com." In response to Interrogatory 4, Delvepoint confirmed that "Delvepoint has advertised and marketed Delvepoint.com nationally." In response to Interrogatory 5, Delvepoint confirmed that "Delvepoint has arrangements with the following suppliers, none of which are New Jersey entities." In response to Interrogatory No. 6,

Delvepoint confirmed that "Delvepoint does not receive any information directly from any New Jersey government entity." In response to Interrogatory No. 11, Delvepoint confirmed that "Delvepoint has not entered into any contract executed in the state of New Jersey or to be performed in whole or in part there." In response to Interrogatory 13 Delvepoint confirmed that "Delvepoint has not commenced any legal actions in the state of New Jersey." In response to Interrogatory No. 14, Delvepoint confirmed that "Delvepoint has not been authorized to do business in the State of New Jersey by any state or governmental agency, department or organization." Finally, in response to Interrogatory No. 15., Delvepoint confirmed that "Delvepoint has not applied for any tax credit or tax deduction in its home state of Florida for any taxes paid in New Jersey." Delvepoint's responses to Plaintiffs' First Set of Requests for Production for Documents similarly demonstrate a lack of personal jurisdiction over it in New Jersey. For example, in response to Request for Production No. 19., Delvepoint confirmed that "Delvepoint will provide documents reflecting the number of searches on Delvepoint.com containing New Jersey as a search criterion and the number of searches with any state as a search criterion in the last five years, as well as the revenue derived from each group of searches over the last five years."

Further, Delvepoint's Supplemental Memorandum of Law in Support of the Motion to Dismiss under Rule 12(b)(2) and its Affidavit in Support of John A. (Tony) Del Vecchio related thoroughly Delvepoint's lack of contacts with New Jersey. Therein it was confirmed that Delvepoint is not incorporated or headquartered in New Jersey, does not maintain an office in New Jersey, is not registered to do business in New Jersey, has no members who are residents of New Jersey. ECF No. 56, ¶ 11. It was also confirmed that Delvepoint provides an online service portal accessible from anywhere in the country, does not target New Jersey to obtain the data it resells, does not target New Jersey to resell its data, and does not specifically advertise the services of its

website to New Jersey residents. ECF No. 56, ECF No. 56, ¶¶ 10, 12, 13, 14. These facts illuminate Delvepoint's response to Interrogatory No. 2. that since December 1, 2023, the total number of active customers of Delvpoint.com based in New Jersey was 97 from among 4793 active customers in total," which reflects a proportion of just 2.02%.

Having provided the information above, Delvepoint maintains that Plaintiffs' seeking further information is not proportional to the need to determine personal jurisdiction over it. Delvepoint has already produced sufficient information for a determination that personal jurisdiction does not lie in New Jersey.

## **PRCEDURAL BACKGROUND**

On April 2, 2025, the Court ordered Plaintiffs to serve on or before April 14, 2025 "any interrogatories and requests for production of documents relevant to the motions of defendants to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure." ECF No. 60. Thus, the Court's order affirmatively limited discovery to the issue of personal jurisdiction. The Court's order employed further limiting language reading, "Plaintiffs are precluded from additional discovery without further order of the court." *Id.* Delvepoint was ordered to respond to these jurisdictional discovery requests by May 14 2025. *Id.*

On May 14, 2025, Delvepoint served responses to Plaintiff's jurisdictional interrogatories and requests for production of documents. Courtesy Copies of these were emailed an mailed to the court, rather than being filed, given their confidential contents, pursuant to the Court's May 12, 2025 order. ECF No. 64. Delvepoint's responses consisted of all non-privileged information relevant to the issue of personal jurisdiction and proportionate to the needs of the case in its possession or reasonably available to it.

On June 4, 2025, Atlas sent Delvepoint and all other defendants who are movants in the consolidated Motion to Dismiss based on Fed. R. Civ. P. 12(b)(2) a single letter broadly concluding that "after reviewing each of defendant's responses, we believe they are deficient and incomplete." *See* Plaintiffs' June 4, 2025 Letter, attached to the Declaration of Robert J. Cosgrove as **Exhibit A**. While the letter was addressed to no movant in particular, it included a list for each movant, enumerating the jurisdictional interrogatories and requests for production of documents that Plaintiffs allege are deficient as to that movant. The letter did not, however, include an explanation as to how each of the enumerated responses in each of the unique lists was deficient. Instead, the letter called for a "joint meet and confer." *Id*.

On June 9, 2025, the parties participated in a joint meet and confer, wherein it was explained to counsel for Plaintiffs that individual conferences regarding the specific enumerated responses alleged to be deficient as to each movant were preferred, given that each movant's responses were uniquely tailored to its ability to access materials for production and its theory as to why there is not personal jurisdiction over it. *See* Declaration of Robert J. Cosgrove ¶ 9. Counsel for plaintiffs affirmatively manifested that it would be in touch with the individual movements. Delvepoint was never contacted for an individual meet and confer to clarify the alleged deficiencies in its responses. *See* Declaration of Robert J. Cosgrove ¶11.

On June 17, 2025, the Court ordered Plaintiffs to file "on or before June 30, 2025, any motion to compel defendants to respond to interrogatories and requests for production of documents related to the issue of personal jurisdiction." ECF No. 72. The Court ordered Delvepoint to file its Opposition by July 14, 2025. *Id*. On June 30, 2025, Plaintiffs filed a Motion to Compel Personal Jurisdiction Discovery. ECF No. 78. It should be noted that Plaintiffs now move to compel Delvepoint to provide documents responsive to Request for Production of

Documents No. 3, which was not raised in the June 4, 2025 letter. The instant Motion to Compel Personal Jurisdiction Discovery is Delvepoint's first notice of that alleged deficiency, such that no good faith effort was made by Plaintiffs to work toward a resolution.

### STANDARD

"[A] discovery request may be denied if, after assessing the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues, the District Court finds that there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the proposed discovery." *Takacs v. Union County,* 2009 WL 3048471, at *1 (D.N.J.2009).

While the party resisting production must demonstrate that the requested documents do not come within the scope of Fed. R. Civ. P. 26(b)(1), or that they are of "such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure," so that it "do[es] more than argue that to compile and produce [documents] would be burdensome" [*Barton v. RCI, LLC*, No. CIV.A. 10-3657 PGS, 2013 WL 1338235, at *3 (D.N.J. Apr. 1, 2013)(internal citations omitted)], this burden consists in "clarifying and explaining its objections and to provide support therefor." *Tele-Radio Sys. Ltd. v. De Forest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981).

Rule 26(b)(2)(C)(i) and (iii) indicate that "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; ... or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in

controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

"Ultimately, it is within the Court's discretion whether to grant a motion to compel disclosure." *United States v. Chazen*, No. 3:08-CV-2314 FLW DEA, 2019 WL 113722, at *2 (D.N.J. Jan. 4, 2019) (*citing In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 668 (3d Cir. 2003)). However, where courts have found that a party has already produced information covering the topics in the requests that the movant claims go unanswered, they have concluded that further production would be cumulative and disproportionately burdensome. *See, e.g.*, *Pearson Educ., Inc. v. Chegg, Inc.*, No. CV 21-16866, 2023 WL 7489982, at *2 (D.N.J. Nov. 13, 2023); *Mirarchi v. Seneca Specialty Ins. Co.*, 564 F. App'x 652, 655 (3d Cir. 2014) (denying motion to compel discovery when the documents sought were "already produced, may not exist, and/or were in the possession of third parties).

## **ARGUMENT**

**I.    The "Effects Test" Does Not Apply and The Complaint Falls Short of Stating a Prima Facie Case for Personal Jurisdiction.**

Plaintiffs' Motion to Compel Personal Jurisdiction Discovery opens its legal argument by asserting what is not in dispute: that the Complaint[1] filed against Delvepoint justifies discovery to establish personal jurisdiction. The Court plainly found this to be true in its April 2, 2025 order permitting discovery "relevant to the motions of defendants to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure." ECF No. 60. Plaintiffs invoke the standard for granting

---

[1] While Plaintiffs' Motion to Compel Personal Jurisdiction Discovery makes reference to the "complaints" against the various defendants who joined in the Motion to Dismiss under 12(b)(2), "Complaint" herein shall refer to that filed against Delvepoint on February 7, 2024 in the action in the Superior Court of New Jersey Law Division, Morris County, bearing Docket No. MRS-L-000244-24 and removed to the United States District Court for the District of New Jersey on March 22, 2024.

personal jurisdiction discovery, namely that a complaint must present factual allegations "with reasonable particularity" to suggest the "requisite contacts between [the defendant] and the forum state." ECF No. 78 at 3, *citing Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003). However, this is a standard for whether jurisdictional discovery should be permitted, *not* whether responses are sufficient or whether a motion to compel should be granted.

"[J]urisdictional discovery is not a license for the parties to engage in a fishing expedition." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 782 n.20 (3d Cir. 2018) (internal quotations omitted). Third Circuit has made clear that this is "all the more true after the 2015 amendments to the Federal Rules of Civil Procedure," which require discovery to be proportional to the needs of the case. *Id.* District courts "should take care to circumscribe the scope of discovery . . . to only the factual questions necessary to determine its jurisdiction," taking into account the proportionality factors under Federal Rule of Civil Procedure 26(b)(1). *Id.*

Plaintiffs' further argue that the Complaint states a prima facie case for personal jurisdiction under the "effects test" established in *Calder v. Jones*, 465 U.S. 783 (984) and under the traditional purposeful availment rubric. ECF No. 78, at 3–9. Delvepoint will demonstrate 1) why the effects test cannot be applied in this action to determine whether the Court has personal jurisdiction over Delvepoint, such that any interrogatories or requests for production of documents designed to evoke responses that may satisfy that test are plainly objectionable as only going to the merits; and 2) why any interrogatories or requests for production of documents designed to evoke responses that may inform the applicable purposeful availment rubric have be addressed with all nonprivileged and reasonably available information in Delvepoint's possession or reasonably available to it.

Finally, it should be noted that Plaintiffs' failure to contact Delvepoint for an individual meet and confer violates Local Rule 37.1(b), which requires a "good faith effort to resolve by agreement the issues raised by the motion without the intervention of the Court and that the parties have been unable to reach agreement." This alone is a sufficient basis for denying Plaintiffs' Motion to Compel. *See, e.g.*, *Mesadieu v. Martinez*, Civ. No. 18-842, 2023 U.S. Dist. LEXIS 70805, at *7 (D.N.J. Apr. 24, 2023) (holding that "failure to comply with . . . L. Civ. R. 37.1(b)(1) is a sufficient procedural basis upon which to deny Plaintiff's motion" to compel).

### A.    The Effects Test Cannot Determine Personal Jurisdiction Over a Defendant Alleged to Have Violated Daniel's Law.

The "effects test" established in *Calder v. Jones*, 465 U.S. 783 (984) has been clearly articulated in cases such as *Remick v. Manfredy* to require that "(1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and] (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." 238 F.3d 248, 258 (3d Cir. 2001). Plaintiffs argue first that the effects test applies because Daniel's Law creates an intentional tort [ECF No. 78 at 5] and next that the Complaint makes a prima facie case for satisfying the effects test. ECF No. 78 at 5–8. These will be addressed in turn.

Notably, the "effects test" has been strictly confined by its first enumerated element to determining personal jurisdiction in actions alleging *intentional torts*. Plaintiffs do not contest this. Instead, they attempt to demonstrate that Daniel's Law creates an intentional tort.

First, Plaintiffs assert that "Daniel's Law creates an intentional tort" [ECF No. 78, at 5] because, as specified in Plaintiffs' Supplemental Brief on the issue of strict liability under Daniel's Law, it "requires an intentional act of disclosure, though liability may be imposed for such a

disclosure only if the defendant was negligent in reviewing and responding to received nondisclosure requests." CA No. 24-04105-HB, ECF No. 67, at 4 n. 2. However, Daniel's Law simply does not require that any disclosure of personal information be intentional. Even if Daniel's Law did require the disclosure to be intentional, Daniel's Law would still only create a private cause of action for a statutorily defined violation, not a tort. Even if the elements of Daniel's Law are taken to include those enumerated in Plaintiff's Supplemental Brief, namely "(1) that the defendant received a 'written notice' from 'an authorized person seeking nondisclosure,' and (2) that despite receiving that notice, the defendant nonetheless disclosed the home address or unpublished phone number of the covered person more than '10 business days following receipt' of notice," [CA No. 24-04105-HB, ECF No. 67 at 4 n. 2.] these elements do not compose any intentional tort recognized in New Jersey. Indeed, for purposes of concluding that Daniel's Law imposes a negligence standard, this Court has characterized Daniel's Law as only "analogous to the common law tort of invasion of privacy of the intimate details of a person's life" [ECF No. 38, at 39] and thereby not itself a tort. *See* Black's Law Dictionary, *Intentional Tort* (12th ed. 2024) (an intentional tort is "[a] tort committed by someone acting with general or specific intent. Examples include battery, false imprisonment"). There is no specific intent standard of liability in Daniel's Law. This Court reached this exact conclusion in its ruling dated November 26, 2024, explaining "the court concludes that Daniel's Law does not mandate a specific intent standard of liability." ECF No. 42 at 39.

In furtherance of their attempt to demonstrate that Daniel's Law creates an intentional tort, Plaintiffs claim generally that "[i]ntentional torts often impose an intent requirement only on the conduct element (here, the act of disclosure) without requiring intent as to the harmful or wrongful effects of that conduct." ECF No. 78, at 6. This contention is problematic for two reasons. First, in

support of this contention, Plaintiffs point only to multiple well-settled intentional torts such as battery, continuing trespass, intentional nuisance, and intentional publication of private facts, all for their elements requiring intentional conduct but not intention as to harmful effects. Plaintiffs, however, raise no *statute* that has ever been held to be an intentional tort for purposes of the *Calder* effects test. Second, the contention presupposes that the "conduct element" of Daniel's law is any initial disclosure by a defendant. But, as asserted in the Consolidated Motion to Dismiss under Rule 12(b)(2), Daniel's Law does not render unlawful an initial disclosure of a personal information [CA No. 24-04380-HB, ECF No. 42, at 17]; rather, the failure to cease disclosure after receipt of a takedown request is the "conduct element" of Daniel's Law. This Court has expressly found that Daniel's Law must be read as imposing liability only if a defendant unreasonably disclosed or made available the home addresses and unlisted telephone numbers of covered persons after the statutory deadline had expired." ECF No. 38, at 39. The Court has plainly attributed a negligence standard to that conduct element. In its November 26, 2024 opinion, this Court found that "Daniel's Law is reasonably susceptible to a construction with a negligence standard of liability." ECF No. 38, at 36.

Concluding their attempt to demonstrate that Daniel's Law is an intentional tort, Plaintiffs note that the Complaint alleges a willful violation of Daniel's Law. ECF No. 78, at 6. Even if the Complaint alleges a willful violation of the statute, this allegation does not transform Daniel's Law into an intentional tort. A willful violation of Daniel's Law would only represent the intentional performance of acts which themselves compose no tort under New Jersey law.

Second, assuming that the effects test applies at all, Plaintiff's argue that the Compliant alleges a prima facie case for satisfying the effects test, such that plaintiffs are entitled to discovery on its elements. ECF No. 78, at 5–8. Having already commented on why Daniel's Law does not

create an intentional tort, and therefore why the effects test cannot apply to determine whether the Court has personal jurisdiction, Delvepoint will demonstrate why the complaint does not create a prima facie case as to the last two elements of the effects test.

The Complaint does not allege that the "brunt of the harm" caused by the conduct described therein was felt "in the forum." The Complaint alleges only that "Defendants did not cease the disclosure or re-disclosure on the Internet or the otherwise making available of information as required under Daniel's Law, and their failure in doing so each constitute a separate violation under the law" and that "as a result of Defendants' failure to comply with Daniel's Law, Plaintiffs have suffered damages, and request all available relief." ECF No. 1, ¶¶ 62, 63. Plaintiffs argue now, not in the Complaint, that they have suffered "violation of their right to privacy in their home addresses and phone numbers." ECF No. 78, at 7. However, whether there has been a violation of a "right to privacy" besides any expressly created by Daniel's Law is a question not before this Court, such that the question of where any associated harm may have been felt is also not before the Court. Plaintiffs also argue now, not in the Complaint, that they have suffered "the psychic injury associated with the loss of control over access to their contact information... and... risks of harassment, threats, and violence." ECF No. 78, at 7. Simply, the Complaint does not allege that the brunt of the harm was felt in the forum because it does not allege what harm Plaintiffs have felt.

Finally, The Complaint does not allege facts sufficient to infer that Delvepoint "expressly aimed" tortious activity at New Jersey. Plaintiffs argue that the "express aiming" element of the *Calder* effects test is satisfied when a defendant has actual or constructive knowledge "that conduct is aimed at the forum" or "that it was targeting a plaintiff in the forum." ECF No. 78, at 7. This articulation of the express aiming requirement is circular, since it begs the conclusion of aiming,

and misinterprets the source. Plaintiffs rely upon the finding in *Briskin v. Shopify* that "a company's internet activity may subject the company to specific personal jurisdiction in a given forum if the company 'knows—either actually or constructively' about its customer base there and 'exploits that base for commercial gain.'" *Briskin v. Shopify, Inc.*, 135 F.4th 739, 757 (9th Cir. 2025) (*citing Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011)). However, in that Ninth Circuit case, the Defendant was alleged to have committed various privacy related torts by *intentionally* installing a program onto the computers of those who accessed its website as customers. It was knowledge of its *intentional acts* upon its customers that represented express aiming by the Defendant in *Briskin*. Herein, as noted, the Complaint only alleges Delvepoint failure to cease disclosure, conduct to which this Court has applied a *negligence* standard. The proper and authoritative articulation of the express aiming prong comes from *Hasson v. Fullstory*, wherein the Third Circuit stated, "We have rejected the argument that 'the 'expressly aiming' requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" *Hasson v. FullStory, Inc.*, 114 F.4th 181, 196 (3d Cir. 2024) (*citing Budget Blinds, Inc. v. White*, 536 F.3d 244, 264 (3d Cir. 2008) (cleaned up)). "Indeed, while a defendant's 'knowledge that the plaintiff is located in the forum is necessary to the application of *Calder*,' that 'alone is insufficient to satisfy the targeting prong of the effects test.'" *Id.* citing *IMO Indus.*, 155 F.3d at 266 (3d. Cir. 1998). "At a minimum, [Plaintiffs] ha[ve] to allege that [a defendant] knew that a given user was in [the forum] *before* [the intentional conduct]. *Id.* If Plaintiffs' argument that Daniel's Law creates an intentional tort because of the initial "act of disclosure" [ECF no. 78, at 6] is taken as true, but Plaintiffs' argument that the a nondisclosure request following that act is what gave Delvepoint knowledge of the residence of the Individual Plaintiffs and assignors to Atlas is also taken as true

[ECF no. 78, at 7], then Delvepoint could not know the residence of the Individual Plaintiffs or assignors to Atlas *before* that intentional conduct, and cannot be said to have engaged in "express aiming" under *Hasson*.

It should be noted, on this basis, that Delvepoint does not concede as true that mere knowledge that a plaintiff resides in the forum can satisfy the express aiming prong of the effects test. *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 290 (2014) (under the "effects test," explaining that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but *whether the defendant's conduct connects him to the forum* in a meaningful way") (emphasis added); *Rockwood Select Asset Fund XI v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014) ("*Walden* teaches that personal jurisdiction cannot be based on interaction with a plaintiff known to bear a strong connection to the forum state."). Delvepoint merely argues that if Plaintiffs' theory that knowledge is enough is taken as true, their allegations of intent to disclose and awareness created by a nondisclosure request are at odds, because then a defendant would lack knowledge before the intentional conduct. Rather, to satisfy the third prong the third prong, Plaintiffs must allege that Delvepoint improperly disclosed covered persons' addresses or unpublished phone numbers "specifically *because* they live" in New Jersey. *Aakash Dalal v. Clearview AI, Inc.*, Civ. No. 24-10380, 2025 U.S. Dist. LEXIS 118674, at *24 (D.N.J. May 1, 2025), *report and recommendation adopted*, 2025 U.S. Dist. LEXIS 117436 (D.N.J. June 20, 2025) (emphasis in original).

### B. The Complaint Does Not State a Prima Facie Case for Jurisdiction under the Applicable Purposeful Availment Test.

Plaintiffs next assert that the Complaint alleges that Defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum' and 'invok[ed] the benefits and protections of [the forum's] laws.'" ECF No. 78, at 9, *citing Hasson v. FullStory, Inc.*, 114 F.4th

181 at 186 (*quoting Toys "R" Us, Inc. v. Step Two*, S.A., 318 F. 3d 446 at 451). However, in permitting jurisdictional discovery, the Court has *only* signified that the Complaint presents "factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between the [parties] and the forum state.'" *Toys "R" Us*, 318 F.3d at 456 (*quoting Mellon Bank*, 960 F.2d at 1223). As stated in the Consolidated Motion to Dismiss under 12(b)(2), the Complaint falls far short of establishing a prima facie case for personal jurisdiction under the purposeful availment test. CA No. 24-04380-HB, ECF No. 42, at 1.

First, Delvepoint has not purposefully availed itself of the forum of New Jersey, because Delvepoint does not have contacts with New Jersey which amount to a "deliberate targeting of the forum." *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 103 (3d Cir. 2009). Plaintiffs claim that Delvepoint "deliberately 'reached out beyond' its home" and could "reasonably anticipate being haled into court" in New Jersey [*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351, 359 (2021) (*quoting Walden v. Fiore*, 571 U.S. 277, 285 (2014))] because it "purposefully collected data on New Jersey residents—in many cases, from New Jersey public records—and know[s] that customers or users of that information are in New Jersey." ECF No. 78, at 9. However, Delvepoint does not collect data from New Jersey public records, but rather from the data sources indicated in its response to jurisdictional Interrogatory No 5. This data is kept on servers throughout the country, all operated by Delvepoint's data sources and not Delvepoint itself. *See* Affidavit in Support of Delvepoint's Supplemental Memorandum of Law in Support of the Motion to Dismiss under 12(b)(2), ECF. No. 56. Further, merely knowing that customers or users of that information are in New Jersey cannot support purposeful availment. "A basic awareness that residents of a specific forum use a website is insufficient; the facts must demonstrate that the website targeted those users." *M.H. ex rel. C.H. v. Omegle.com LLC*, No. 20-

cv-11294, 2021 WL 1050234, at *3 (D.N.J. Mar. 19, 2021). Finally, merely maintaining a universally accessible website cannot satisfy purposeful availment. *See, e.g.*, *Hurley v. Cancun Playa Oasis Int'l*, No. 99-cv-574, 1999 WL 718556, at *3 (E.D. Pa. Aug. 31, 1999) (Bartle, J.) (finding Pennsylvania lacked jurisdiction because there was no showing "[defendant's] Web page was directed at Pennsylvania more than any other state"); *Hankins v. Doubletree Mgmt., LLC*, No. 19-cv-8698, 2022 WL 3013089, at *4 (D.N.J. July 29, 2022) (finding New Jersey lacked jurisdiction because there was no showing defendant was "directly targeting its web site to the [forum] state").

Second, the claims asserted in the Complaint do not arise out of or relate to any connection Delvepoint may be said to have with New Jersey. Plaintiffs bluntly claim that "because [Delvepoint's] contacts with the forum revolve around [its] collection and disclosure of New Jersey data concerning New Jersey residents, Plaintiffs' claims clearly "arise out of or relate to" [Delvepoint's] contacts with the forum. ECF No. 78, at 8–9. Plaintiffs gloss over the distinction between data collection and data disclosure. As stated above, Delvepoint does not have data collection contacts with New Jersey, but rather with its data sources located throughout the country. Even if it had, Daniel's Law does not concern itself with data collection, only disclosure after the ten-day period, such that the claim that Delvepoint has violated Daniels' Law does not "arise out of or relate to" Delvepoint's data collection. Further, the claim does not arise out of Delvepoint's data disclosure. In order for a claim to be said to "arise out of or relate to" a defendant's contacts with the forum, "there must be 'a strong relationship among the defendant, the forum, and the litigation.'" *Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) (*quoting Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 365–66 (2021)). As stated in the Motion to Dismiss under 12(b)(2), the Third Circuit has concluded that a "website's accessibility" in the forum is not enough

to "establish[] the strong connection between the forum and the litigation that Due Process requires." CA No. 24-04380-HB, ECF No. 42, at 16, *citing Hasson*, 114 F.4th at 194. Any Disclosure conduct by Delvepoint occurred outside New Jersey, in Florida where the takedown requests are processed. *See* Affidavit in Support of Delvepoint's Supplemental Memorandum of Law in Support of the Motion to Dismiss under 12(b)(2), ECF No. 56.

### II.    Plaintiffs' Discovery Requests Seek information that Is Not Relevant to Determine Personal Jurisdiction Nor Proportional to That Need.

Plaintiffs did not state a prima facie case for personal jurisdiction, but were nonetheless granted jurisdictional discovery as to Delvepoint. As noted, any interrogatories and requests for production of documents Plaintiffs might serve were to be "related to the issue of personal jurisdiction." ECF No. 60. Jurisdictional discovery must not, however, serve as "a fishing expedition" into the underlying merits, while "under the guise of jurisdictional discovery." *LaSala v. Marfin Popular Bank Public Co., Ltd.*, 410 Fed.Appx. 474, 478 (3d Cir.2011). "The court may limit discovery to ensure its scope is proportional to the needs of a case...." *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, No. 18-1215, 2019 WL 117555, at *2 (3d Cir. Jan. 7, 2019). "The scope of relevant and proportionate jurisdictional discovery is necessarily more limited than merits discovery." *In re Diisocyanates Antitrust Litig.*, No. MC 18-1001, 2020 WL 7424975, at *1 (W.D. Pa. Dec. 18, 2020). "The determination of the limits of discovery is within the sound discretion of the court and is a case-specific determination." *Id.* at *2. As will be demonstrated below, the interrogatories and requests for production of documents for which Plaintiffs argue deficient answers have been provided are not "proportional to the needs of the case" because they do not seek information that supports the elements of the applicable purposeful availment test. Thus, this Court should not grant Plaintiffs' Motion to Compel Personal Jurisdiction Discovery.

A. **The Interrogatories for Which Plaintiffs Argue Insufficient Responses Have Been Provided Do Not Seek Information Relevant to the Applicable Test for Personal Jurisdiction And Are Overbroad.**

Plaintiffs argue that "[T]he mere statement that a discovery request is overly broad, burdensome[,] oppressive and irrelevant is not adequate to voice a successful objection." *Solano-Sanchez*, No. CV 19-4016, 2021 WL 229400, at *6. However, Delvepoint's objections to interrogatories are much more detailed than such a "mere statement" and are directly concerned with ensuring that Delvepoint's answers to interrogatories respond only to discovery the scope of which is "proportional to the needs of a case" [*Democratic Nat'l Comm.*, No. 18-1215, 2019 WL 117555, at *2] with regard to determining personal jurisdiction. Plaintiffs' Motion seeks to compel responses to Interrogatories which cannot be said to be proportional to Plaintiffs' legitimate discovery needs and have already been adequately addressed in Delvepoint's disclosures. In particular, Plaintiffs deem deficient Delvepoint's Responses to Interrogatories 3, 7, 8, 9, and 10.

> **Interrogatory 3: Identify all officers, directors, employees, contractors, vendors, and any other individuals or entities who, on Defendant's behalf, have since December 1, 2023 been involved in any marketing, advertising, soliciting, or offering of any product, service, or digital platform that has published, provided access to, or otherwise made available information subject to Daniel's Law, including without limitation in New Jersey or to New Jersey customers.**

Delvepoint objected to the portion of this interrogatory seeking the identities of "officers, directors, employees, contractors,... and any other entities who ... have... been involved in any marketing, advertising, soliciting, or offering of any product, service, or digital platform" in part on the basis that seeks information that is not relevant to personal jurisdiction or reasonably calculated to lead to the discovery of admissible evidence on the issue of personal jurisdiction. Plaintiffs argue in support of their position that Delvepoint's response to this interrogatory is deficient that "direct in-forum activities are not the only means of establishing personal jurisdiction over an out-of-state defendant." *Hasson*, 114 F.4th at 186. However, the *Hasson* Court did not

make this finding as to the identities of officers, directors, employees, contractors, and any other entities affiliated with the defendants therein. Indeed, the *Hasson* Court was careful to qualify this finding by immediately invoking *Calder v. Jones* and noting that the "tortfeasors... despite minimal contacts in California—intentionally caused harm there." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024). As discussed above, the effects test cannot apply to a determination of personal jurisdiction over a Defendant accused of violating Daniel's Law. Even if it could so apply, none of the officers, directors, employees, contractors, and any other entities affiliated with Delvepoint are alleged to have engaged in "dissemination of the protected information of covered persons in New Jersey." ECF No. 78, at 14. All of these members reside outside of New Jersey. *See* Affirmation in Support of Supplemental Memorandum of Law in Support of the Motion to Dismiss under Rule 12(b)(2), ECF No. 56. Under the proper purposeful availment scheme, Plaintiffs point to no precedent demonstrating that the identities of officers, directors, employees, contractors, and any other entities affiliated with a defendant but not located in New Jersey can support minimum contacts with the forum. Further, production of the identities of these individuals and entities is "likely to produce irrelevant documents that do not advance the inquiry" into personal jurisdiction. *Solano-Sanchez*, No. CV 19-4016, 2021 WL 229400, at *6 (noting that the production of materials relating to phenomena outside the forum was likely to produce irrelevant documents). Finally, Plaintiffs allege that Delvepoint "did not address whether it had officers, directors, or employees involved in the relevant activities." ECF No. 78, at 14 n. 6. However, Delvepoint already disclosed John A. (Tony) Del Vecchio as CEO of Delvepoint in the Affirmation in Support of its Supplemental Memorandum of Law in Support of the Motion to Dismiss under Rule 12(b)(2). ECF No. 56. Thus, the court should not require Delvepoint to identify the individuals and entities sought in Interrogatory No. 3.

**Interrogatory 7: Identify any audit, review, or evaluation of Defendant conducted since December 1, 2023 by any officers, directors, employees, contractors, vendors, and other individuals or entities acting on Defendant's behalf for compliance with New Jersey law for any of Defendant's services, products, or digital platforms that publish, provide access to, or otherwise makes available information subject to Daniel's Law.**

Delvepoint objected to this interrogatory in part on the basis that it seeks information that is not relevant to personal jurisdiction or reasonably calculated to lead to the discovery of admissible evidence on the issue of personal jurisdiction. Plaintiffs argue in support of their position that Delvepoint's response to this interrogatory is deficient that "audits, reviews, and evaluations for compliance with New Jersey law... are relevant to show knowledge under the effects test." ECF No 78, at 18. Even if the effects test could apply to determine personal jurisdiction in this matter, plaintiffs fail to demonstrate the "knowledge" that *Hasson* specified is necessary to satisfy the express aiming prong of the effects test. Any audit for compliance with New Jersey law would not necessarily reveal knowledge of Delvepoint's New Jersey customer base before the "act of disclosure" [ECF No. 78, at 6] that Plaintiffs allege is the intentional conduct that renders Daniel's Law and intentional tort.[2] Under the proper purposeful availment scheme, Plaintiffs invoke *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351, 365 (2021), to claim that Delvepoint has "'systematically served a market in [New Jersey] for the very [information] that the plaintiffs allege[]…injured them in' New Jersey." ECF No. 78, at 17. But in *Ford*, the Supreme Court found that the claim arose out of and related to the defendant's contacts with the forum because the defendant "systematically served a market in those states" by "advertis[ing], sell[ing], and service[ing]" its product in the forum. *Ford Motor Co.*, 592 U.S. at 365 (2021). Herein, Delvepoint

---

[2] It should be noted that plaintiffs never specify what Delvepoint's "act of disclosure" was an do not disturb the statement in the Affirmation in Support of the Supplemental Memorandum of Law in Support of the Motion to Dismiss under Rule 12(b)(2) that it merely "connects users of its website to the data on the servers of the entities whose data it resells." ECF No. 56, ¶ 11.

has not targeted New Jersey with advertisements and has not sold information in New Jersey but rather from its headquarters in Florida. *See* Affirmation in Support of the Supplemental Memorandum of Law in support of the Motion to Dismiss under Rule 12(b)(2), ECF No. 56 ¶¶ 7, 14. An audit for compliance with New Jersey law cannot demonstrate that a defendnat "systematically served" the forum as required by *Ford*. Thus, the court should not require Delvepoint to identify any audit, review, or evaluation sought in Interrogatory No. 7.

> **Interrogatory 8: Identify all officers, directors, employees, contractors, vendors, and other individuals or entities who, on Defendant's behalf, have reviewed, analyzed, processed, and/or responded to any Daniel's Law requests received since January 12, 2023.**

Delvepoint objected to this interrogatory in part on the basis that it seeks information that is not relevant to personal jurisdiction or reasonably calculated to lead to the discovery of admissible evidence on the issue of personal jurisdiction. Plaintiffs claim that "the identity of personnel who reviewed, analyzed, processed, or responded to Daniel's Law requests is relevant to determine who has information regarding each Defendant's knowledge of the probable effects of disclosure after receipt of a nondisclosure request from a covered person." ECF 78, at 19. Thus, for Interrogatory 8, Plaintiffs rely exclusively upon the effects test and make no attempt at justification under the applicable purposeful availment test. Even if the effects test could apply to determine personal jurisdiction over Delvepoint, an interrogatory into the identities of all officers, directors, employees, contractors, vendors, and other individuals or entities who processed Daniel's Law requests is overly broad to demonstrate knowledge of the kind that can satisfy express aiming for purposes of the effects test. "At a minimum, [Plaintiffs] ha[ve] to allege that [a defendant] knew that a given user was in [the forum] *before* [the intentional conduct]. *Hasson v. FullStory*, 114 F.4th 181, 191 (3d Cir. 2024). It strains credulity to conclude that an interrogatory into the identity of all Delvepoint personnel who processed the takedown requests is "proportional

to the need[]" [*Democratic Nat'l Comm. v. Republican Nat'l Comm.*, No. 18-1215, 2019 WL 117555, at *2 (3d Cir. Jan. 7, 2019)] to demonstrate "know[ledge] that ... [Plaintiffs] would suffer the brunt of the harm caused by [any] tortious conduct *in the forum. Hasson v. FullStory, Inc.*, 114 F.4th 181, 196 (3d Cir. 2024). Thus, the court should not require Delvepoint to identify any officers, directors, employees, contractors, vendors, and other individuals or entities sought in Interrogatory No. 8.

> **Interrogatory 9: Describe all actions taken by Defendant to respond to any written requests under Daniel's Law received since January 12, 2023, including all communications with persons who sent nondisclosure requests to Defendant requesting redaction of their home addresses and phone numbers.**

Delvepoint objected to this interrogatory in part on the basis that it seeks information that is not relevant to personal jurisdiction or reasonably calculated to lead to the discovery of admissible evidence on the issue of personal jurisdiction. Plaintiffs claim that "[a]ctions to respond to nondisclosure requests are relevant to establish actual or constructive knowledge under the effects test." ECF No. 78, at 19. Thus, for Interrogatory No. 9, Plaintiffs also rely exclusively upon the effects test and do not endeavor to justify the Interrogatory under the applicable purposeful availment test. Even if the effects test could apply to determine personal jurisdiction over Delvepoint, an interrogatory into all actions taken by Delvepoint to respond to any written requests under Daniel's Law including all communications with persons who sent nondisclosure requests is overly broad to demonstrate the knowledge of the kind required by *Hasson* to satisfy express aiming. "At a minimum, [Plaintiffs] ha[ve] to allege that [a defendant] knew that a given user was in [the forum] *before* [the intentional conduct]. *Hasson v. FullStory*, 114 F.4th 181, 191 (3d Cir. 2024). Plaintiffs do not explain how response nondisclosure requests could demonstrate knowledge of the residence of the Plaintiffs or individual assigns before the early intentional conduct (the "act of disclosure"). ECF No. 78, at 6. Further, Interrogatory No. 9 is plainly

concerned with the merits of the dispute, since as written it is unlimited in its search into how Delvepoint responded to the takedown requests. The Third Circuit has found that a party permitted jurisdictional discovery may not engage in "a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *LaSala*, 410 F. App'x at 478 (*citing Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA,* 623 F.3d 147, 157 (3d Cir.2010)). Thus, the court should not require Delvepoint to identify the actions taken by Delvepoint to respond to any written requests under Daniel's Law including all communications with persons who sent nondisclosure requests sought in Interrogatory No. 9.

> **Interrogatory 10: Identify any address or phone number of a New Jersey resident that remained available in the database associated with any of Defendant's products, services, or digital platforms 10 days or more after Defendant received a nondisclosure request from a person asserting a right to nondisclosure under Daniel's Law, including any address or phone number of a New Jersey resident that is currently available in the database of information associated with any of Defendant's products, services, or digital platforms.**

Delvepoint objected to this interrogatory in part on the basis that it seeks information that is not relevant to personal jurisdiction or reasonably calculated to lead to the discovery of admissible evidence on the issue of personal jurisdiction, and in part on the basis that this information is as accessible to Plaintiffs as it is to Delvepoint. Plaintiffs claim that "addresses and phone numbers disclosed after receipt of a nondisclosure request are relevant to show both that 'the defendant committed an intentional tort' by violating Daniel's Law and that 'the defendant expressly aimed [its] tortious conduct at the forum' by disclosing forum-specific content with knowledge that the effects will be felt by a New Jersey resident in New Jersey." Motion to Compel Personal Jurisdiction Discovery at 20. It strains credulity to conclude that an interrogatory into any address or phone number of a New Jersey resident that remained available for 10 days after receipt of a nondisclosure request is "proportional to the need[]" [*Democratic Nat'l Comm. v. Republican*

*Nat'l Comm.*, No. 18-1215, 2019 WL 117555, at *2 (3d Cir. Jan. 7, 2019)] to demonstrate either 1) knowledge of Delvepoint's New Jersey customer base for purposes of satisfying "express aiming" under the effects test or 2) an intentional tort rather than a statutory violation. First, as noted, the relevant type of knowledge is knowledge of the residence of the Plaintiffs *before* the intentional conduct. Plaintiffs allege that the initial disclosure prior to the receipt of a takedown request is the intentional conduct that makes Daniel's Law an intentional tort. Any personal information that remained available more than ten days after a disclosure request cannot demonstrate this foreknowledge. Second, Plaintiffs' professed attempt to establish an intentional tort, when Daniel's Law creates only statutory violation, is plainly concerned with the merits of the dispute and constitutes an impermissible "fishing expedition." *LaSala*, 410 F. App'x at 478 (*citing Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA,* 623 F.3d 147, 157 (3d Cir.2010)). Thus, the court should not require Delvepoint to identify any address or phone number of a New Jersey resident that remained available for 10 days after receipt of a nondisclosure request sought in Interrogatory No. 9.

**B.    The Requests for Production of Documents for Which Plaintiffs Argue Insufficient Responses Have Been Provided Do Not Seek Information Relevant to the Applicable Test for Personal Jurisdiction And Are Overbroad.**

Plaintiffs claim that Delvepoint's objections to their jurisdictional requests for production of documents are meritless. ECF No. 78, at 20. However, in so doing, Plaintiffs rush past their initial burden to demonstrate that their requests for production of documents seek information which is relevant to the issue of personal jurisdiction under the applicable purposeful availment scheme. *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 344 F.R.D. 207, 215 (D.N.J. 2023) (finding

that the moving party bears the burden to show that the information sought is relevant). Even if Plaintiffs were to satisfy that burden, Delvepoint will demonstrate that its objections to requests for production of documents, as its objections to interrogatories, are directly concerned with ensuring that Delvepoint's responses and document production are addressed only to discovery the scope of which is "proportional to the needs of a case" [*Democratic Nat'l Comm.*, No. 18-1215, 2019 WL 117555, at *2] with regard to determining personal jurisdiction. Plaintiffs Motion seeks to compel responses to document requests which are not proportional to jurisdictional discovery, and have already been sufficiently addressed by Delvepoint. In particular, Plaintiffs deem deficient Delvepoint's Responses to Requests for Production of Documents Nos. 3, 5, 6, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 21.

> **RFP 3:**  **All documents reflecting or relating to Defendant's share of revenues, profits, or income derived from activities in New Jersey and any other state reflecting the state in which the activities generating the revenues, profits, or income occurred.**

Delvepoint objected to this Request for Production in part on the basis that it seeks information that is not relevant to personal jurisdiction or reasonably calculated to lead to the discovery of admissible evidence on the issue of personal jurisdiction. Plaintiffs Claim "documents reflecting a Defendant's share of income derived from New Jersey activities are directly relevant to whether a Defendant 'systematically served a market in [the forum state].'" ECF 78, at 23 *citing* Ford Motor, 592 U.S. 351. Delvepoint confirmed that "Delvepoint will produce documents reflecting Delvepoint's revenue from New Jersey customers and its revenue from customers regardless of where they reside, in the last five years." These figures are represented in Delvepoint's Document production at bates number 000199 in a chart assembled by Delvepoint. The financial statements that inform this chart are clearly not proportional to the need of

determining personal jurisdiction over Delvepoint. Thus, the Court should not require Delvepoint to produce further documents to respond to Request for Production of Documents No. 3.

> **RFP 5: All documents reflecting or relating to Defendant's communications, correspondence, or interactions with Plaintiffs or any other New Jersey residents who sent Daniel's Law Requests to Defendant or any other entity associated with Defendant.**

Delvepoint also objected to this Request for Production in part on the basis that it seeks information that is not relevant to personal jurisdiction or reasonably calculated to lead to the discovery of admissible evidence on the issue of personal jurisdiction, and would be unduly burdensome and oppressive. Plaintiffs argue that "correspondence with Plaintiffs and other New Jersey residents who sent nondisclosure requests is directly relevant to whether the Defendant (i) received a nondisclosure request from each Plaintiff; and (ii) read the nondisclosure requests it received." Again, plaintiffs rely solely on the effects test to justify this discovery request and make no attempt to support its seeking relevant information under the applicable purposeful availment scheme. Even if the effects test were applicable to a determination of personal jurisdiction over Delvepoint in this matter, to produce Delvepoint's "communications, correspondence, or interactions with Plaintiffs or any other New Jersey residents who sent Daniel's Law Requests" would not be relevant to the effects test nor proportional to the need to demonstrate that Delvepoint "committed an intentional tort" and "expressly aimed [its] tortious conduct at the forum." First, "all documents" reflecting Delvepoint's communications with such persons could not demonstrate that Delvepoint violated Daniel's Law and committed, in Plaintiffs' reasoning, an intentional tort. Plaintiffs fail to limit their request to documents that would demonstrate a violation. Second, Plaintiffs again insist that the knowledge required by the effects test to satisfy its "express aiming prong" is knowledge of that the tort would "harm a New Jersey resident in New Jersy." ECF 78, at 24. However, the Third circuit has expressly rejected this over simplification of the rule. As

noted, the *Hasson* Court stated, "[w]e have rejected the argument that "the 'expressly aiming' requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 196 (3d Cir. 2024) (*citing Budget Blinds, Inc. v. White*, 536 F.3d 244, 264 (3d Cir. 2008) (cleaned up)). "At a minimum, [Plaintiffs] ha[ve] to allege that [a defendant] knew that a given user was in [the forum] *before* [the intentional conduct]. 114 F.4th 181, 191 (3d Cir. 2024). Delvepoint's correspondence with such persons, even if revealing knowledge of their residence, is not a request limited to revealing the knowledge of the kind that can satisfy the express aiming prong of the effects test; that is, knowledge of the residence of Plaintiffs *before* the conduct that Plaintiffs argue renders Daniel's Law an intentional tort (the initial "act of disclosure" ahead of receiving a nondisclosure request that could create knowledge of a plaintiff's residence). ECF 78, at 6. Further, as for burdensomeness, even to confirm receipt of only the 16,257 nondisclosure requests allegedly sent by the assignors to Atlas would require extensive cross referencing of the email addresses that Atlas offers to provide in its Motion to Compel, which constitutes an undue burden to Delvepoint at the jurisdictional discovery stage in light of the fact that this information does not inform the question of personal jurisdiction but rather the merits of the case. Thus, the Court should not require Delvepoint to produce communications, correspondence, or interactions with Plaintiffs or any other New Jersey residents who sent Daniel's Law Requests sought in request for production No. 5.

**RFP 6: All documents reflecting or relating to Defendant's involvement with any related entity's communications, correspondence, or interactions with Plaintiffs or any other New Jersey residents who sent Daniel's Law Requests to Defendant or any other related entity.**

Delvepoint also objected to this Request for Production in part on the basis that it seeks information that is not relevant to personal jurisdiction or reasonably calculated to lead to the

discovery of admissible evidence on the issue of personal jurisdiction. As noted above, a defendant's response to Plaintiffs' unilateral actions in sending nondisclosure requests cannot provide the basis for personal jurisdiction. *See, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("a defendant will not be haled into a jurisdiction solely as a result of . . . unilateral activity of another party"). Plaintiffs claim that if "[Delvepoint] relies on an affiliate to process Daniel's Law requests or otherwise communicate with covered persons, documents evidencing the Defendant's involvement in that related entity's communications with Plaintiffs and other covered persons are relevant to show knowledge and express targeting under the effects test." ECF No. 78, at 25. However, Delvepoint does not rely upon other entities to process Daniel's Law requests, as noted in its Response to Interrogatory No. 7 and any such processing would not be relevant or proportional to the needs of the case for the same reasons outlined above with regard to personal jurisdiction Request for Production of Documents No. 6.

> **RFP 7: All documents reflecting or relating to Defendant's policies, procedures, or practices for**
> **a. Processing, responding to, or complying with Daniel's Law Requests from New Jersey residents sent to Defendant or any other related entity.**
> **b. Handling information related to New Jersey residents.**

Delvepoint also objected to this Request for Production in part on the basis that it seeks information that is not relevant to personal jurisdiction or reasonably calculated to lead to the discovery of admissible evidence on the issue of personal jurisdiction. *See, e.g.*, *Newman v. N.C. Ins. Underwriting Ass'n*, No. 20-cv-1464, 2020 U.S. Dist. LEXIS 212387, at *24 (D.N.J. Nov. 9, 2020) ("[Defendant's] phone call and letter . . . were merely responses to Plaintiff's actions.  It is well-settled that unilateral activity on the part of a plaintiff does not make a defendant amenable to personal jurisdiction."). Plaintiffs fail to cite any case law which supports their apparent theory that Delvepoint's response to their unilateral acts in sending nondisclosure requests is somehow

relevant to personal jurisdiction. They also fail to mention that such a theory was rejected in a recent decision by a New Jersey state court. *See Atlas Data Privacy Corp. v. LexisNexis Risk*, BER-L-000875-24 (Law Div. June 6, 2025) ("the allegations that the unlawful actions occurred in New Jersey are *based on the unilateral activities of the Plaintiffs*") (emphasis added). Plaintiffs claim that "internal policies for compliance with Daniel's Law and handling New Jersey data are relevant to show (i) knowledge that the brunt of the harm caused by disclosure following receipt of a nondisclosure request will be felt in New Jersey... and (ii) that the Defendant "'systematically served a market in [New Jersey] for the very [information] that the plaintiffs allege[]...injured them in'" New Jersey." ECF No. 78, at 27. First, as for the effects test, even if it were applicable, any policies for handling Daniel's Law Requests or information related to New Jersey Residents do not demonstrate a knowledge of the kind necessary to satisfy the express aiming prong of the effects test; this is because while such policies may reveal that a defendant knows of some customer base in New Jersey, it does not reveal its knowledge that the effects of any intentional tort will be felt in New Jersey, precisely because Daniel's Law does not create an intentional tort. *See* the above discussion is Section I, A. Second, as for "systematically serv[ing] a market in New Jersey," which Plaintiffs cite from *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351, 365 (2021), the Supreme Court found in *Ford* that the claim arose out of and related to the defendant's contacts with the forum because the defendant "systematically served a market in those states" by "advertis[ing], sell[ing], and service[ing]" its product in the forum. *Ford Motor Co.*, 592 U.S. at 365 (2021). Herein, Delvepoint has not targeted New Jersey with advertisements and has not sold information in New Jersey but rather from its headquarters in Florida. *See* Affirmation in Support of the Supplemental Memorandum of Law in support of the Motion to Dismiss under Rule 12(b)(2), ECF No. 56 ¶¶ 7, 14. Any policies for processing Daniel's law requests and handling

information of New Jersey residents, which Delvepoint does not claim exist, would not represent "systematically serv[ing] a market in New Jersey" as required by *Ford*. Thus, the Court should not require Delvepoint to produce additional documents sought in request for production No. 7.

> **RFP 9: All documents reflecting or relating to any complaints, claims, lawsuits, or investigations involving Defendant or any other related entity and any New Jersey residents or customers regarding any product or service that publishes, provides access to, or otherwise discloses personal information of New Jersey residents and where Defendant or any other related entity did not dispute the personal jurisdiction of the court in which those complaints, lawsuits, or investigations were based.**

Delvepoint objected to this Request for Production in part on the basis that it seeks information that is not relevant to personal jurisdiction or reasonably calculated to lead to the discovery of admissible evidence on the issue of personal jurisdiction. Plaintiffs attempt to demonstrate that this request for production supports the purposeful availment scheme by maintaining that such documents are relevant to whether exercising jurisdiction over a Defendant would "comport with traditional notions of fair play and substantial justice such that the defendant should reasonably anticipate being haled into court." *Hasson*, 114 F.4th at 186 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). However, the exercise of personal jurisdiction over a defendant in a prior lawsuit does not create personal jurisdiction over a defendant in a present one. *See Beaton v. LG Chem, Ltd.*, No. 220-CV-06806BRMESK, 2021 WL 3828835, at *5 (D.N.J. Aug. 26, 2021) (finding that a defendants' "jurisdictional positions in... prior lawsuits could not constitute consenting to personal jurisdiction in [the forum] for this litigation."); *See also Fesniak v. Equifax Mortg. Servs. LLC*, Civ. A. No. 14-3728, 2015 U.S. Dist. LEXIS 66238 at *16 (D.N.J. May 20, 2015) (rejecting the plaintiff's "theory that [the defendant's] participation in a prior lawsuit in this forum concerning different claims with different parties constitut[ed] consent to settle all future disputes in New Jersey"); *RP Healthcare, Inc. v. Pfizer, Inc.*, Civ. A. No. 12-5129, 2017 U.S. Dist. LEXIS 162380, at *11 (D.N.J. Sept. 28, 2017) (citations

omitted) ("[T]he fact that a defendant has admitted to personal jurisdiction in one case does not necessarily mean that the same defendant is subject to personal jurisdiction in another, separate case.") Thus, the Court should not require Delvepoint to produce additional documents in response to Request for Production No. 9.

> **RFP 10: Any and all documents reflecting or relating to any training, education, or guidance provided by Defendant or any other related entity to its employees, agents, or representatives regarding any service that provides access to personal information of New Jersey residents, including but not limited to the legal requirements, obligations, and rights under the Fair Credit Reporting Act ("FCRA"), the New Jersey Identity Theft Prevention Act ("NJITPA"), the New Jersey Fair Credit Reporting Act ("NJFCRA"), or any other New Jersey state law or regulation.**

Delvepoint also objected to this Request for Production in part on the basis that it seeks information that is not relevant to personal jurisdiction or reasonably calculated to lead to the discovery of admissible evidence on the issue of personal jurisdiction. Plaintiffs claim that "internal documents concerning training for compliance with New Jersey data-privacy law are plainly relevant to whether Defendants "'systematically served a market in [New Jersey] for the very [information] that the plaintiffs allege[]…injured them' ... and/or 'direct[ed] electronic activity into [the forum] with the manifest intent of engaging in business or other interactions within that state in particular.'" Thus, Plaintiffs aim to demonstrate that this request seeks information that supports the purposeful availment scheme. First, as for "systematically serv[ing] a market in New Jersey," which Plaintiffs cite from *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351, 365 (2021), as noted, the Supreme Court found in *Ford* that the claim arose out of and related to the defendant's contacts with the forum because the defendant "systematically served a market in those states" by "advertis[ing], sell[ing], and service[ing]" its product in the forum. *Ford Motor Co.*, 592 U.S. at 365 (2021). Herein, Delvepoint has not targeted New Jersey with advertisements and has not sold information in New Jersey but rather from its headquarters

in Florida. *See* Affirmation in Support of the Supplemental Memorandum of Law in support of the Motion to Dismiss under Rule 12(b)(2), ECF No. 56 ¶¶ 7, 14. Any training, education, or guidance provided by a defendnat or any other related entity to its employees, agents, or representatives regarding any service that provides access to personal information of New Jersey residents, would not represent "systematically serv[ing] a market in New Jersey" in the manner found to satisfy the purposeful availment test in *Ford*. Second, as for "direct[ed] electronic activity into [the forum] with the manifest intent of engaging in business or other interactions within that state in particular," for which Plaintiffs cite to *Hasson* in an attempt to satisfy the effects test, the *Hasson* court *continued* its parenthetical by saying that a defendant's "set[ting] up its generally accessible, semi-interactive Internet website" did not demonstrate such electronic activity. *Hasson*, 114 F.4th at 191 ((*quoting Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F. 3d 390, 401 (4th Cir. 2003)). As stated in Delvepoint's Supplemental Memorandum of Law in Support of the Consolidated Motion to Dismiss under 12(b)(2), Delvepoint's website is universally accessible and does not serve a particular state. *See* Affirmation in Support of the Supplemental Memorandum of Law in support of the Motion to Dismiss under Rule 12(b)(2), ECF No. 56 ¶ 10. Further, it strains credulity to conclude that a request for "training materials" generally would demonstrate "business or other interactions within New Jersey *in particular*." *Id.* Thus, the request is overbroad. Thus, the Court should not require Delvepoint to produce additional documents in response to Request for Production No. 10.

> **RFP 11: Any and all documents reflecting or relating to any audits, reviews, or evaluations conducted by Defendant or any other related entity or any third-party regarding compliance under New Jersey law for any product or service that publishes, provides access to, or otherwise makes available information subject to Daniel's Law.**

Delvepoint objected to this Request for Production in part on the basis that it seeks information that is not relevant to personal jurisdiction or reasonably calculated to lead to the

discovery of admissible evidence on the issue of personal jurisdiction. Plaintiffs argue that such audits, reviews, and evaluations are relevant to "(i) knowledge and express targeting under the effects test; (ii) whether the Defendant "systematically served" the New Jersey market for personal data ...; and (iii) whether the Defendant directed its electronic activity into New Jersey with 'the intent of engaging in business or other interactions within that state in particular.'" ECF No. 78, at 30. First, as noted, the Third Circuit has "rejected the argument that "the 'expressly aiming' requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 196 (3d Cir. 2024) (*citing Budget Blinds, Inc. v. White*, 536 F.3d 244, 264 (3d Cir. 2008) (cleaned up)). "At a minimum, [Plaintiffs] ha[ve] to allege that [a defendant] knew that a given user was in [the forum] *before* [the intentional conduct]. *Id*. Plaintiff fail to demonstrate how a defendant's audits for compliance with New Jersey law, even if revealing knowledge of the residence of its customers, can reveal the knowledge of the kind that can satisfy the express aiming prong of the effects test, that is knowledge of the residence of Plaintiffs *before* the conduct that Plaintiffs argue renders Daniel's Law an intentional tort (the initial "act of disclosure" ahead of receiving a nondisclosure request that could create knowledge of a plaintiff's residence). ECF 78, at 6. Second, as for "systematically serv[ing] a market in New Jersey," which Plaintiffs cite from *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351, 365 (2021), as noted, the Supreme Court in *Ford* found personal jurisdiction because the defendant "systematically served a market in [the forum]" by "advertis[ing], sell[ing], and service[ing]" its product in the forum. *Ford Motor Co.*, 592 U.S. at 365 (2021). Herein, Delvepoint has not targeted New Jersey with advertisements and has not sold information in New Jersey but rather from its headquarters in Florida. *See* Affirmation in Support of the Supplemental Memorandum of Law in

support of the Motion to Dismiss under Rule 12(b)(2), ECF No. 56 ¶¶ 7, 14. Any audits, reviews, or evaluations conducted by Defendant or any other related entity or any third-party regarding compliance under New Jersey law would not represent "systematically serv[ing] a market in New Jersey" in the manner found to satisfy purposeful availment in *Ford*. Third, as for "direct[ed] electronic activity into [the forum] with the manifest intent of engaging in business or other interactions within that state in particular," as noted above, the *Hasson* court *continued* its parenthetical by saying that a defendant's "set[ting] up its generally accessible, semi-interactive Internet website" did not demonstrate such electronic activity. *Hasson*, 114 F.4th at 191 ((*quoting Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F. 3d 390, 401 (4th Cir. 2003)). As stated in Delvepoint's Supplemental Memorandum of Law in Support of the Consolidated Motion to Dismiss under 12(b)(2), Delvepoint's website is universally accessible and does not serve a particular state. *See* Affirmation in Support of the Supplemental Memorandum of Law in support of the Motion to Dismiss under Rule 12(b)(2), ECF No. 56 ¶ 10. Thus, the Court should not require Delvepoint to produce the documents sought in Request for Production No. 11.

> **RFP 12: Any and all documents reflecting or relating to any opt-out, exclusion, or suppression options or mechanisms offered or provided by Defendant or any other related entity to any New Jersey residents or customers through any of Defendant's websites identified in the Complaint, or any other product or service that publishes, provides access to, or otherwise discloses information subject to Daniel's Law.**

Delvepoint objected to this Request for Production in part on the basis that it seeks information that is not relevant to personal jurisdiction or reasonably calculated to lead to the discovery of admissible evidence on the issue of personal jurisdiction. Plaintiffs here rely exclusively on the effects test and make no attempt to justify Request for Production No. 12 based on the applicable purposeful availment test. Plaintiffs claim that an opt-out, exclusion, or suppression mechanism provided to New Jersey residents is relevant to whether a Defendant acted

with actual and/or constructive knowledge that it would "violate that covered person's rights under New Jersey law and expose them to harm in New Jersey, which goes to whether the Defendant 'committed an intentional tort' and 'expressly aimed [its] tortious conduct at the forum.'" ECF No. 78, at 31. For the reasons stated at length above, the effects test cannot apply to determine personal jurisdiction over a defendant in an action alleging a violation of Daniel's Law. Absent the justification of this test, a request for opt-out, exclusion, or suppression options or mechanisms concerns *only the merits of the dispute* as to whether Delvepoint violated Daniel's Law. As noted, the Third Circuit has found that Jurisdictional discovery must not, serve as "a fishing expedition" into the underlying merits, while "under the guise of jurisdictional discovery." *LaSala v. Marfin Popular Bank Public Co., Ltd.*, 410 Fed.Appx. 474, 478 (3d Cir.2011). Further, even if the effects test applied, it strains credulity to conclude that a defendant's opt-out, exclusion, or suppression *options* available to all users demonstrate its knowledge of the residence of its New Jersey customers, or that it committed an intentional tort expressly aimed at the forum, as Plintiff's claim would satisfy the effects test. Thus, the Court should not require Delvepoint to produce additional documents in Response to Request for Production No. 12.

**RFP 13: Any and all documents reflecting or relating to any internal or external communications, correspondence, or discussions by Defendant or any other related entity regarding the introduction and passage of Daniel's Law in New Jersey, including the applicability, scope, and effect of the law.**

Delvepoint also objected to this Request for Production in part on the basis that it seeks information that is not relevant to personal jurisdiction or reasonably calculated to lead to the discovery of admissible evidence on the issue of personal jurisdiction. Plaintiffs claim such documents demonstrate "(i) knowledge and express targeting under the effects test; and (ii) that the Defendant directed its electronic activity into New Jersey with 'the intent of engaging in business or other interactions within that state in particular' under the purposeful-availment test."

ECF No. 78, at 31. First, although the effects test cannot apply herein, internal and external communications regarding the passage of Daniel's Law cannot demonstrate knowledge of the kind that can ever satisfy the express aiming prong of the effects test. As noted, Third Circuit has "rejected the argument that 'the 'expressly aiming' requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 196 (3d Cir. 2024) (*citing Budget Blinds, Inc. v. White*, 536 F.3d 244, 264 (3d Cir. 2008) (cleaned up)). "At a minimum, [Plaintiffs] ha[ve] to allege that [a defendant] knew that a given user was in [the forum] *before* [the intentional conduct]. 114 F.4th 181, 191 (3d Cir. 2024). Plaintiff fail to demonstrate how a defendant's awareness of the passage of Daniel's Law can reveal the knowledge of the kind that can satisfy the express aiming prong of the effects test, that is knowledge of the residence of Plaintiffs *before* the conduct that Plaintiffs argue renders Daniel's Law an intentional tort (the initial "act of disclosure" ahead of receiving a nondisclosure request that could create knowledge of a plaintiff's residence). ECF 78, at 6. Second, as noted, "the intent of engaging in business or other interactions within that state in particular" was *not* by itself found by the *Hasson* Court to support purposeful availment. *Hasson* court *continued* its parenthetical by saying that a defendant's "set[ting] up its generally accessible, semi-interactive Internet website," as Delvepoint has done herein [*See* Affirmation in Support of the Supplemental Memorandum of Law in support of the Motion to Dismiss under Rule 12(b)(2), ECF No. 56 ¶ 10], did not demonstrate such electronic activity. *Hasson*, 114 F.4th at 191 ((*quoting Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F. 3d 390, 401 (4th Cir. 2003)). Thus, the Court should not require Delvepoint to produce additional documents in response to Request for Production No. 13.

**RFP 14: All documents reflecting or relating to Defendant's receipt of nondisclosure requests pursuant to Daniel's Law, including the date of receipt, the manner of**

**receipt, the number of requests, the contents of those requests, and Defendant's analysis of those requests.**

Delvepoint objected to this Request for Production in part on the basis that it seeks information that is not relevant to personal jurisdiction or reasonably calculated to lead to the discovery of admissible evidence on the issue of personal jurisdiction. *See, e.g.*, *Newman v. N.C. Ins. Underwriting Ass'n*, No. 20-cv-1464, 2020 U.S. Dist. LEXIS 212387, at *24 (D.N.J. Nov. 9, 2020) ("[Defendant's] phone call and letter . . . were merely responses to Plaintiff's actions. It is well-settled that unilateral activity on the part of a plaintiff does not make a defendant amenable to personal jurisdiction."). Once again, Plaintiffs fail to cite any case law which supports their apparent theory that Delvepoint's response to their unilateral acts in sending nondisclosure requests is somehow relevant to personal jurisdiction and fail to mention that such a theory was rejected in a recent decision by a New Jersey state court. *See Atlas Data Privacy Corp. v. LexisNexis Risk*, BER-L-000875-24 (Law Div. June 6, 2025) ("the allegations that the unlawful actions occurred in New Jersey are *based on the unilateral activities of the Plaintiffs*"). Plaintiffs here rely expressly and exclusively on the effects test and make no attempt to justify Request for Production No. 14 based on the applicable purposeful availment test. Plaintiffs claim that these documents are relevant to establish that the Defendant "committed an intentional tort" and "expressly aimed [its] tortious conduct at the forum." ECF No. 78, at 32. For the reasons stated at length above, the effects test cannot apply to determine personal jurisdiction over a defendant in an action alleging a violation of Daniel's Law. Absent the justification of this test, a request for documents reflecting the receipt of nondisclosure requests concerns only the merits of the dispute as to whether Delvepoint violated Daniel's Law. As noted, the Third Circuit has found that Jurisdictional discovery must not, serve as "a fishing expedition" into the underlying merits, while "under the guise of jurisdictional discovery." *LaSala v. Marfin Popular Bank Public Co., Ltd.*, 410

Fed.Appx. 474, 478 (3d Cir.2011). Further, even if the effects test applied, Plaintiffs fail to show that documents reflecting receipt of nondisclosure requests can demonstrate knowledge of the kind that could satisfy the express aiming prong of the effects test. As noted, Third Circuit has "rejected the argument that 'the 'expressly aiming' requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 196 (3d Cir. 2024) (*citing Budget Blinds, Inc. v. White*, 536 F.3d 244, 264 (3d Cir. 2008) (cleaned up)). "At a minimum, [Plaintiffs] ha[ve] to allege that [a defendant] knew that a given user was in [the forum] *before* [the intentional conduct]. *Id.* Plaintiffs allege that the intentional conduct that makes Daniel's law an intentional tort is the initial intentional "act of disclosure" of personal information prior to receiving a nondisclosure request and negligently failing to comply [ECF No. 78, at 6], but also the receipt of the nondisclosure request is what creates knowledge that a defendant's intentional conduct will "expose [Plaintiffs] to harm" in New Jersey. ECF No. 78, at 7. But, if both are taken as true, then Delvepoint's receipt of nondisclosure requests *cannot* demonstrate its knowledge of the residence of any plaintiff or assignor at the time of the earlier alleged intention conduct, the act of disclosure disclosure. Thus, the Court should not require Delvepoint to produce additional documents in response to Request for Production No. 14.

> **RFP 15: All documents reflecting or relating to Defendant's response to Daniel's Law requests received from the Covered Persons and Individual Plaintiffs.**

Delvepoint objected to this Request for Production in part on the basis that it seeks information that is not relevant to personal jurisdiction or reasonably calculated to lead to the discovery of admissible evidence on the issue of personal jurisdiction. Plaintiff's again claim that these documents are relevant to whether the Defendant had the actual and/or constructive knowledge required under the "express aiming" element of the effects test. ECF No. 78, at 33.

However, for the same reasons as outlined in the above paragraph addressing Delvepoint's response to Request for Production No. 14, the Court should not require Delvepoint to produce additional documents in response to Request for Production No. 15.

> **RFP 16: All documents reflecting or relating to any changes to Defendant's processes regarding Daniel's Law nondisclosure requests or any other requests to remove personal information of New Jersey residents.**

Delvepoint objected to this Request for Production in part on the basis that it seeks information that is not relevant to personal jurisdiction or reasonably calculated to lead to the discovery of admissible evidence on the issue of personal jurisdiction. Plaintiffs, fail to demonstrate how such a request is tailored to the concept of specific jurisdiction, because they do not explain how Defendants' "processes regarding Daniel's Law nondisclosure requests" can constitute a contact with the forum state, as required for personal jurisdiction. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 318 (3d Cir. 2007). Plaintiffs bluntly claim that documents evidencing changes to processes for nondisclosure requests show Defendants' knowledge of their duties under Daniel's Law. ECF No. 78, at 33. Again, defendants rely expressly and exclusively upon the inapplicable effects test and make no attempt to justify the request as seeking information that would support the applicable purposeful availment scheme. Even if the effects test applied, Plaintiffs fail to explain how documents reflecting changes to Defendant's processes regarding Daniel's Law nondisclosure requests cannot demonstrate knowledge that the harm of its any intentional conduct would be felt by any plaintiff or assignor in the forum, as Plaintiff's allege, *before* the intentional disclosure that Plaintiffs argue is the relevant intentional conduct. *See Hasson v. FullStory, Inc.*, 114 F.4th 181, 196 (3d Cir. 2024). Further, since the effects test does not apply, such changes would only be relevant to the merits of the dispute regarding Delvepoint's alleged violation of Daniels law. *LaSala v. Marfin Popular Bank Public Co., Ltd.*, 410 Fed.Appx.

474, 478 (3d Cir.2011). To the extent that this request seeks any changes after the alleged receipt of nondisclosure requests, Federal Rule of Evidence 407 plainly excludes evidence of "subsequent remedial measures" to demonstrate negligence or culpable conduct. And, Plaintiffs do not explain how changes to a defendant's processes regarding Daniel's Law nondisclosure requests would lead to *other* admissible evidence. Thus, the Court should not require Delvepoint to produce additional documents in response to Request for Production No. 16.

> **RFP 17: All documents reflecting or relating to the actions taken by Defendant to preserve documents in connection with this litigation, including without limitation records of every time Defendant has published, provided access to, or otherwise made available the home addresses or phone numbers of the Covered Persons and Individual Plaintiffs.**

Delvepoint objected to this Request for Production in part on the basis that it seeks information that is not relevant to personal jurisdiction or reasonably calculated to lead to the discovery of admissible evidence on the issue of personal jurisdiction. Plaintiffs claim these documents are "directly relevant to whether an adverse or spoliation inference undermines the Defendant's personal-jurisdiction defense" and "directly relevant to the 'intentional tort,' 'brunt of the harm,' and 'express aiming' elements of the effects test." ECF No. 78, at 34. Even if Delvepoint's documents reflecting or relating to the actions taken by Defendant to preserve documents in connection with this litigation are, as plaintiff's claim, relevant to an adverse or spoliation inference, this Court's April 2, 2025 Order limited Plaintiffs' discovery requests to those "relevant to the motion of defendants to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure." ECF No. 60, at 10. If any doubt as to the scope of this discovery existed, the court's June 17, 2025 order describes discovery it has permitted as "interrogatories and requests for production of documents related to the issue of personal jurisdiction." ECF No. 72, at 4. Further, the manner in which a defendnat has preserved documents for litigation cannot, contrary

to Plaintiffs conclusion, demonstrate any element of the inapplicable effects test. Delvepoint's document retention does not have any bearing on whether Daniel's Law can be characterized as creating an intentional tort. As for the "brunt of the harm" and "express aiming" elements, the retention of records "including those of each time Defendant has published, provided access to, or otherwise made available the home addresses or phone numbers" is not limited to disclosures that are alleged to have harmed the individual plaintiffs or assignors. Further, such documents would not demonstrate express aiming because, under the Plaintiffs' theory of knowledge, Delvepoint cannot be said to have known that the individual plaintiffs and assignors resided in New Jersey *before* the intentional conduct that Plaintiffs allege renders Daniel's Law and intentional tort, namely intentionally disclosing the personal information in advance of any nondisclosure request. ECF No. 78, at 6,7. *See Hasson v. FullStory, Inc.*, 114 F.4th 181, 196 (3d Cir. 2024). As Delvepoint maintained in its affidavit in support of its Supplemental Memorandum of Law in Support of the Motion to Dismiss under Rule 12(b)(2), it merely connects users of its website to data on the servers of the entities whose data it resells. ECF No. 56, ¶ 11. The contents of that data are not on Delvepoint's servers [ECF No. 56, ¶ 11] and only the nondisclosure requests are alleged by Plaintiffs to place Delvepoint on notice of the residence of the individual plaintiffs and assignors herein. ECF No. 78, at 7. Thus, the Court should not require Delvepoint to produce additional documents in response to Request for Production No. 17.

**RFP 21: All documents reflecting or relating to Defendant's modification of any product or service to address New Jersey laws and regulations, including but not limited to Daniel's Law, NJITPA, and NJFRCA.**

Finally, Delvepoint objected to this Request for Production of Documents in part on the basis that it seeks information that is not relevant to personal jurisdiction or reasonably calculated to lead to the discovery of admissible evidence on the issue of personal jurisdiction. Whether a

defendant knew about "New Jersey regulations governing data privacy" is irrelevant as it has nothing to do with any contacts Delvepoint may have with the forum. *See Robinson v. Horizon Blue Cross-Blue Shield*, No. 12-cv-2981¸2013 U.S. Dist. LEXIS 180325, at *22 (D.N.J. Dec. 23, 2013) (courts will not "allow a party to roam in shadow zones of relevancy and to explore matter which does not appear germane merely on the theory that it might become so") (citations omitted). Plaintiffs claim that "compliance documents focused on New Jersey privacy laws show Defendants' knowledge that they sell, transfer, or otherwise transact data with or within the state of New Jersey, and are subject to New Jersey regulations governing data privacy." ECF No. 78, at 36. Plaintiffs cite *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.,* presumably for its finding that the claims against the defendant therein arose out of or related to its contacts with the forum because it "systematically served a market in those states" by "advertis[ing], sell[ing], and service[ing]" its product in the forum. 592 U.S. at 365 (2021). Herein, as noted, Delvepoint has not targeted New Jersey with advertisements and has not sold or disclosed information in New Jersey but rather from its headquarters in Florida. *See* Affirmation in Support of the Supplemental Memorandum of Law in support of the Motion to Dismiss under Rule 12(b)(2), ECF No. 56 ¶¶ 7, 14. Plaintiff fail to demonstrate how any documents reflecting or relating to Defendant's modification of any product or service to address New Jersey laws and regulations would represent "systematically serv[ing] a market in New Jersey" in the manner found to satisfy purposeful availment in *Ford*. Plaintiffs also cite *Keeton v. Hustler Magazine*, presumably for its finding that a defendnat which "continuously and deliberately exploited the [forum state] market,... must reasonably anticipate being haled into court there." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984). However, in *Keeton*, the court's conclusion rested largely on the fact that a substantial number of copies of the subject magazine were regularly sold and distributed in the forum. *Keeton,*

465 U.S. at 780. Herein, as indicated in Delvepoint's Responses to Interrogatory No. 2, since December 1, 2023, the total number of active customers of Delvepoint.com based in New Jersey was 97 from among 4793 active customers in total. It strains credulity to conclude that documents reflecting modification of any product or service to address New Jersey laws could signify "continuous[] and deliberate[] exploitation of the market" [*Keeton,* 465 U.S. at 780] in New Jersey in the manner considered in *Keeton.* Thus, the Court should not require Delvepoint to produce additional documents in response to Request for Production No. 21.

## CONCLUSION

Delvepoint respectfully requests the Court deny Plaintiffs' Motion to Compel Personal Jurisdiction Discovery Responses.

Dated: Springfield, New Jersey
July 14, 2025

WADE CLARK MULCAHY LLP
/s/ Robert J. Cosgrove

_____
Robert J. Cosgrove, Esq.
rcosgrove@wcmlaw.com
Attorney ID # 005222005
955 S. Springfield Ave., Suite 100
Springfield, NJ 07081
(973) 258-1700
*Attorneys for Defendnat Delvepoint*