UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, JANE DOE-2, a law enforcement officer, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN : : : : : : : : | Civil Action No. 1:24-cv-04096-HB |
| PLAINTIFFS, : : | |
| vs. : : | |
| DELVEPOINT, LLC, RICHARD ROES 1-10; fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities, : : : : | |
| DEFENDANTS. : : | |

## DEFENDANT DELVEPOINT, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT

Now comes defendant DELVEPOINT, LLC ("Delvepoint"), by and through its attorneys, WADE CLARK MULCAHY LLP, and answers the Complaint of plaintiffs ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons ("Atlas"), JANE DOE-1, a law enforcement officer, JANE DOE-2, a law enforcement officer, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN (collectively " Plaintiffs"). The allegations of said Complaint have been re-typed below before each paragraph of this answer for the convenience of the Court.

## INTRODUCTION

COMPLAINT:    1.    In these tumultuous times, it is critical that the most sensitive personal information of those who serve the public be protected from unwarranted disclosure. As set forth below, Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement officers, and prosecutors - and their families - with the right to prevent the disclosure of their home addresses and unpublished home telephone numbers, and to enforce those rights against uncooperative profit-seeking data brokers.

ANSWER:    1.    The allegations in the first sentence of this Paragraph consist of conjecture, opinion, and/or legal conclusions to which no response is required. The allegations in the second sentence of this Paragraph refer to a statute which is a writing, the contents of which speak for itself, and Delvepoint denies any allegations that misconstrue, misinterpret, or mischaracterize that statute. Delvepoint admits only that legislation entitled Daniel's Law was passed in New Jersey.

COMPLAINT:    2.    This complaint seeks to protect those important rights, against companies brokering data and choosing profit and personal gain over a critical public interest and the unequivocal mandate of the law. Companies in the business of disclosing this protected information have avoided accountability for far too long, proffering such information, including home addresses and unpublished home telephone numbers, without sufficient regard for the risks and consequences imposed upon individuals who serve critical judicial and law enforcement roles.

ANSWER:    2.    The allegations in this Paragraph consist of conjecture, opinion, and/or legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

COMPLAINT:    3.    The Legislature and Governor unanimously agree that the basic safety of those who serve - and their families - must be assured. Here, not only do the data brokers wantonly and repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of those who serve. Our judges, law enforcement officers and prosecutors should receive the full measure of protection afforded to them under the same laws they enforce for the safety of all citizens.

ANSWER:    3.    Delvepoint admits only that legislation entitled Daniel's Law was passed in New Jersey. Delvepoint specifically denies any violation of Daniel's Law. The remaining allegations in this Paragraph consist of conjecture, opinion, and/or legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

COMPLAINT:    4.    With this action, Plaintiffs seek to enforce the important rights granted to judges, law enforcement officers, and prosecutors under Daniel's Law. Consistent with the statutory provisions, Atlas brings this action as an assignee for certain individuals, including many family members of law enforcement officers and prosecutors. Plaintiffs seek all available injunctive relief and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

ANSWER:    4.    Delvepoint admits that Plaintiffs seek damages and injunctive relief in their Complaint. Delvepoint denies, however, that Plaintiffs are entitled to any damages. Delvepoint further admits that Atlas purports to bring this action as an assignee for certain individuals, but Delvepoint denies that the assignments were proper or effective and denies that Plaintiffs are entitled to any recovery from Delvepoint. Delvepoint lacks knowledge or information sufficient to form a belief as to the truth of the allegation that the purported assignees were family members of law enforcement officers or prosecutors and, therefore, the allegation is denied. The

remaining allegations in this Paragraph consist of conjecture, opinion, and/or legal conclusions to which no response is required. To the extent a response is required, the remaining allegations are denied.

## BACKGROUND

### Passage of Daniel's Law in New Jersey

COMPLAINT:    5.    In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was shot dead by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just age 20 and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect his parents. By the time his mother, a Judge, came to the door to check on what happened, the killer was gone. But her husband was critically wounded, and Daniel tragically died from the gunshot.

ANSWER:    5.    Upon information and belief, Delvepoint admits.

COMPLAINT:    6.    During the investigation, the perpetrator was found to have certain political and personal grievances against the Judge, and went to their home that day intending to kill her. Instead, he murdered the Judge's son and almost succeeded in killing her husband as well. Investigators eventually connected this attack with another shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman. Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to what was pending before Daniel's mother.

ANSWER:    6.    Delvepoint lacks knowledge or information sufficient to form a belief concerning the allegations in this Paragraph, and therefore they are deemed to be denied.

COMPLAINT:    7.    Critically, the gunman was able to find the home addresses of both of his murder victims through the various people finder resources available on the internet, the same kind of data broker services at issue in this case.

ANSWER:    7.    Delvepoint lacks knowledge or information sufficient to form a belief concerning the allegations in this Paragraph, and therefore they are deemed to be denied.

**New Jersey Passes Daniel's Law in 2020**

COMPLAINT:    8.    In response to the shooting of Daniel, New Jersey enacted Daniel's Law within a few months, in November 2020 (P.L. 2020, c. 125 *codified in* N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1), which prohibits online data brokers from selling, publishing, and distributing the name and address of current and former judges, law enforcement officers, and prosecutors and their eligible family members (i.e., "covered persons"), upon any written request by the covered person. Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of Judges and prosecutors.

ANSWER:    8.    The allegations in this Paragraph refer to a statute which is a writing, the contents of which speak for itself, and Delvepoint denies any allegations that misconstrue, misinterpret, or mischaracterize that statute. Delvepoint admits only that legislation entitled Daniel's Law was enacted in New Jersey. Further, the allegations in this Paragraph consist of legal conclusions to which no response is required.

COMPLAINT:    9.    Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate,

present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed." Data brokers must cease disclosure of this protected information within 10 business days of receiving a nondisclosure request from a covered person.

ANSWER:    9.    The allegations in this Paragraph refer to a statute which is a writing, the contents of which speak for itself, and Delvepoint denies any allegations that misconstrue, misinterpret, or mischaracterize that statute. Further, the allegations in this Paragraph consist of legal conclusions to which no response is required.

## Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022

COMPLAINT:    10.    Similar to the actions taken by the State of New Jersey, federal judges such as U.S. Supreme Court Chief Justice John G. Roberts Jr. proposed and supported a federal version of Daniel's Law. The Chief Justice was quoted stating, "[t]he law requires every judge to swear an oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety ... [a] judicial system cannot and should not live in fear."

ANSWER:    10.    Delvepoint admits the allegations in the first sentence of this Paragraph. The allegations in the second sentence of this Paragraph refer to a writing, the contents of which speak for itself, and Delvepoint denies any allegations that misconstrue, misinterpret, or mischaracterize the statute referred to.

COMPLAINT:    11.    The federal bill, which had broad bipartisan support in both the House and Senate, protected judges' personally identifiable information from resale by data brokers. It allowed federal judges to redact their personal information displayed on federal government internet sites.

ANSWER:    11.    The allegations in this Paragraph refer to a writing, the contents of which speak for itself, and Delvepoint denies any allegations that misconstrue, misinterpret, or mischaracterize the statute referred to.

COMPLAINT:    12.    The U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached, and it was signed by President Biden.

ANSWER:    12.    Delvepoint admits.

**<u>Violence Against Police Officers and Judges Has Not Stopped</u>**

COMPLAINT:    13.    Judges, law enforcement officers, and prosecutors put their lives on the line every day, which is clearly exhibited by numerous horrific stories of violence beyond the story of the murder of Daniel Anderl. For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers and their 10-day old infant. That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.

ANSWER:    13.    The allegations in the first sentence of this Paragraph consist of conjecture, opinion, and/or legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Delvepoint lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences of this Paragraph and, therefore, they are deemed to be denied.

COMPLAINT:    14.    More recently, another perpetrator hunted and killed in cold blood a Maryland Judge, after a child custody ruling. The killing followed that of a Wisconsin Judge in 2022, where the perpetrator killed the retired Judge out of spite for his handling of a criminal case in 2005.

ANSWER:    14.    The allegations in this Paragraph consist of conjecture, opinion, and/or legal conclusions to which no response is required. To the extent a response is required, Delvepoint lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, therefore, they are deemed to be denied.

## THE PARTIES

### The Individual Plaintiffs

COMPLAINT:    15.    Plaintiff JANE DOE-1, whose name has been anonymized for safety reasons, is a decorated veteran police officer working in Northern New Jersey. Between 2021 and 2022, Officer Doe-I participated in a task force that targeted a major criminal organization operating in the state. Her efforts ultimately led to the arrest and prosecution of a member of the organization's leadership, an individual with an extensive criminal history including threats of violence. In the subsequent investigation, digital devices recovered from the organization's leadership were analyzed and photographs of Officer Doe-1's personal residence were identified. Officer Doe-1 lives in the home with her spouse and their young child. Evidence recovered in the investigation included night-time photography of the young child's bedroom and playroom windows, with the light on while the child was playing inside. Further investigation revealed that the criminal organization's leadership had hired a private investigator who searched online data broker websites to obtain the officer's home address. Having identified her home address, text messages confirmed that they had initiated surveillance and were tracking Officer Doe-1 's movements to and from her home, immediately prior to the task force initiating arrests.

ANSWER:    15.    Delvepoint lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, therefore, they are deemed to be

denied. Delvepoint reserves all rights and does not concede that Plaintiff is entitled to proceed anonymously as Jane Doe.

COMPLAINT:         16.      Plaintiff JANE DOE-2, whose name has been anonymized for safety reasons, is a veteran correctional police officer who lives in Northern New Jersey with her husband and two young children. Earlier in her career, Officer Doe-2 was the subject of a death threat from a hostile inmate. The inmate stated that they intended to kill Officer Doe-2, and further implied that they would rely upon a particular private investigator to track down Officer Doe-2 's home address to facilitate the murder. This death threat was investigated and considered credible enough to result in a successful criminal prosecution. Part of Officer Doe-2's current duties include working in her correctional facility's law library, where inmates have access to the Internet including online data broker websites and services. Recently Officer Doe-2 and her coworkers discovered a note left behind by an inmate which included the full name and home address of a young female member of the jail's administrative staff. The most effective ways to safeguard the security and privacy of their home addresses - for their own safety and that of their family members - is a frequent topic of discussion and concern among the correctional police officers working at Officer Doe-2's facility.

ANSWER:        16.        Delvepoint lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, therefore, they are deemed to be denied. Delvepoint does not concede that Plaintiff is entitled to proceed anonymously as Jane Doe.

COMPLAINT:         17.      Plaintiff Officer EDWIN MALDONADO joined the Plainfield, New Jersey police department as a patrol officer in 2000. After a few months on the job, he was assigned to street crimes, where he excelled at field work. In 2005, he became a Detective with Plainfield's major crimes unit and joined a Federal task force targeting the Mara

Salvatrucha-13 (MS-13) gang in New Jersey. He worked with the task force for the next two years. During that time period, he received multiple credible death threats from MS-13 members. Detective Maldonado did not believe he would be able to safeguard his home address while living in Plainfield and relocated his family to a remote location from which he commuted to work. In 2009, because his relocation effort had been successful and MS-13 could not locate his new home address, gang members targeted Detective Maldonado's mother instead. They intended to bum down her building with her inside, but set fire to an adjacent building by mistake. Phone calls between MS-13 members discussing the premeditated murder of Detective Maldonado and his family, and the premeditated murder of Detective Maldonado's mother, were intercepted by jail wiretaps. Later in multiple criminal trials, evidence was entered into the record regarding these intercepted conversations and premeditated murders, contributing to numerous successful prosecutions.

ANSWER:    17.    Delvepoint lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, therefore, they are deemed to be denied.

COMPLAINT:    18.    Plaintiffs Sergeant SCOTT MALONEY ("Sergeant Maloney") and Officer JUSTYNA MALONEY ("Officer Maloney") are husband and wife, both veteran police officers currently serving with the Rahway, New Jersey Police Department. They live together in New Jersey with their two young children. In April of 2023, Officer Maloney responded to a routine call of a suspicious individual outside the Motor Vehicle Commission in Rahway. The individual was an online content creator who often solicits police contact and then films himself debating constitutional rights with the responding officers. A subset of the content creator's audience is vocally anti-police and videos posted to his social media channel have

historically been the source of harassment and intimidation campaigns directed at the officers involved. In this case, Officer Maloney and several other responding officers were filmed discussing a number of legal issues with the content creator, including whether or not the content creator was required to take his hands out of his pockets to show that he was unarmed. Overall, the encounter was routine and ended uneventfully.

ANSWER:    18.    Delvepoint lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, therefore, they are deemed to be denied.

COMPLAINT:    19.    The resulting video footage was selectively edited and posted to YouTube. Almost immediately upon the video being posted, Officer Maloney was targeted by followers of the channel and other individuals who viewed the video. Sergeant Maloney was quickly identified by viewers as Officer Maloney's husband, and became a target himself, due to their relationship as a married couple and his own status as a police officer. Web links to data broker websites publicly disclosing the Maloney family's home address and unpublished home telephone numbers were posted along with explicit death threats and calls for violence, resulting in dozens of threatening phone calls and text messages.

ANSWER:    19.    Delvepoint lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, therefore, they are deemed to be denied.

COMPLAINT:    20.    One of the text messages sent to Sergeant Maloney demanded money and stated that if Sergeant Maloney did not comply then his family would "pay in blood." The unknown messenger went on to state that they knew where the Maloneys lived and sent the full name and home address of one of the Maloneys' nearby relatives as proof of the

messenger's ability to gather sensitive personal information. Sergeant Maloney refused to comply with any demands. He then received a video of three individuals in ski masks armed with handguns and assault rifles repeating the extortion demand. In part of the video, a masked individual points a rifle at the camera and tells Sergeant Maloney that his family is "going to get [their] heads cut off."

ANSWER:    20.    Delvepoint lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, therefore, they are deemed to be denied.

COMPLAINT:    21.    Several weeks later, one of the Maloneys' neighbors observed two suspicious looking individuals in ski masks parked one block away from the home and alerted police. Responding officers arrested two men - who were armed - for unlawful possession of a firearm. Video surveillance captured by nearby houses shows the two men circling the Maloneys' house immediately prior to their arrest. Officer Maloney and her two young children were at home at the time.

ANSWER:    21.    Delvepoint lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, therefore, they are deemed to be denied.

COMPLAINT:    22.    Plaintiff Detective PATRICK COLLIGAN is a 32-year veteran of the Franklin Township police department in Somerset, New Jersey. Since 2014, Detective Colligan has served as the President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state. During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. The seriousness of certain threats

necessitated the installation of a surveillance camera system and alarm system, and training for his spouse and children about how to respond in the event of an attack on their home.

ANSWER:    22.    Delvepoint admits only that Detective Colligan served as the President of the New Jersey State Policeman's Benevolent Association. Delvepoint lacks knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and, therefore, they are deemed to be denied.

COMPLAINT:    23.    Plaintiff Officer PETER ANDREYEV is a 32-year veteran of the Point Pleasant, New Jersey police department. Officer Andreyev currently services as the Executive Vice President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state. During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. Officer Andreyev has counseled many other officers who have been the target of violent threats on ways to protect themselves and their family members from harm. whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

ANSWER:    23.    Delvepoint admits only that Officer Andreyev served as the Executive Vice President of the New Jersey Policeman's Benevolent Association. Delvepoint lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and, therefore, they are deemed to be denied.

COMPLAINT:    24.    Plaintiff Officer WILLIAM SULLIVAN is an 18-year veteran of the New Jersey Department of Corrections. Since 2020, Officer Sullivan has served as the President of New Jersey PBA Local 105, the labor union representing thousands of correctional

police officers from the New Jersey Department of Corrections, the Juvenile Justice Commission, and State Parole. During the course of his law enforcement career, he has received numerous threats of violence directed at him and his family as a result of his public service. Inmates incarcerated within New Jersey's state prisons frequently attempt to discover the protected information of correctional officers working in their facility. These attempts and the risks posed by such information being accessible on the Internet is a frequent topic of discussion and concern among correctional officers and their family members. Officer Sullivan has counseled many officers whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

ANSWER:    24.    Delvepoint admits only that upon information and belief Officer Sullivan served as the President of New Jersey PBA Local 105. Delvepoint lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and, therefore, they are deemed to be denied.

**Plaintiff Atlas and its Assignors**

COMPLAINT:    25.    Plaintiff ATLAS DATA PRIVACY CORPORATION is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

ANSWER:    25.    Upon information and belief, Delvepoint admits.

COMPLAINT:    26.    As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 16,257 individuals who are all "covered persons" under Daniel's Law (together, the "Covered Persons"), including a significant

number of individuals who are family members of judges, law enforcement officers, and prosecutors.

ANSWER:    26.    Delvepoint admits only that Atlas purports to assert claims in this action against Delvepoint as assignee of more than 16,000 alleged "Covered Persons" under New Jersey's Daniel's Law. Delvepoint denies that the purported assignments were proper or valid, that Plaintiffs' claims are permitted by Daniel's Law, and that Delvepoint is liable to Plaintiffs. Delvepoint lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this Paragraph, including whether the purported assignors are "Covered Persons" as defined by Daniel's Law.

COMPLAINT:    27.    The Covered Persons include individuals who reside, work or had previously resided or worked in New Jersey, and qualify as "covered persons" as that term is defined under Daniel's Law, each of whom have claims against Defendants for failing to comply with Daniel's Law.

ANSWER:    27.    Delvepoint denies that the Covered Persons have claims against Delvepoint for failing to comply with Daniel's Law. Delvepoint lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and, therefore, they are deemed to be denied.

COMPLAINT:    28.    As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or re-disclosing on the Internet or otherwise making available their protected information on one or more of Defendants' websites or through other methods of disclosure.

ANSWER:    28.    Delvepoint denies.

COMPLAINT:    29.    Defendants have not complied with the law by ceasing the disclosure or redisclosure on the Internet or the otherwise making available of protected information as required under Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs) as required by the law.

ANSWER:    29.    Delvepoint denies.

COMPLAINT:    30.    In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas.

ANSWER:    30.    The allegations in this Paragraph are legal conclusions to which no response is required. To the extent a response is required, Delvepoint denies that the purported assignments were proper or valid, that Plaintiffs' claims are permitted by Daniel's Law, and that Delvepoint is liable to Plaintiffs. Delvepoint lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this Paragraph, including whether the purported assignors are "Covered Persons" as defined by Daniel's Law, and therefore they are deemed to be denied.

COMPLAINT:    31.    Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other covered persons. Atlas works with and provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, was to increase the safety and well-being of their members and associated households by helping those members to understand and assert the rights provided to them by the law.

ANSWER:    31.    Delvepoint admits only that upon information and belief Atlas has relationships with various unions and associations and purports to provide services including an online platform. Delvepoint lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and, therefore, they are deemed to be denied.

COMPLAINT:    32.    Upon signing up for Atlas, a law enforcement officer or other Covered Person is asked a series of questions to collect required personal information and qualify their eligibility as a covered person under Daniel's Law. Once eligibility is confirmed, they are shown a page explaining how the Atlas platform works:



ANSWER:    32.    Delvepoint lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, therefore, they are deemed to be denied.

COMPLAINT:    33.    AtlasMail is an email service operated by Atlas. Upon signing up with Atlas, each law enforcement officer or other Covered Person receives their own AtlasMail account, with a unique inbox address (e.g. john.doe23@atlasmail.com) for their personal use. A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:



ANSWER:    33.    Delvepoint lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, therefore, they are deemed to be denied.

COMPLAINT:    34.    Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of Atlas as a platform and AtlasMail as an email service, the law enforcement officer or other Covered Person is then presented with a page on which they can review their home addresses and unpublished home telephone numbers, a takedown notice template, and a recommended list of

data brokers to send notices to. On this page the law enforcement officer or other Covered Person can choose whether or not to send takedown notices. If they choose not to send takedown notices to the recommended list, they can select individual recipients at a later page (as shown in the example copied below). Here, each of the Individual Plaintiffs and Covered Persons sent Defendants a takedown notice.



ANSWER:    34.    Delvepoint lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, therefore, they are deemed to be denied.

COMPLAINT:    35.    Any reply or response back from a data broker to the law enforcement officer or other Covered Person is received and displayed in their AtlasMail inbox. AtlasMail is a fully featured email service provider, and its users can reply, forward, or use their AtlasMail account as they would any other email account:





ANSWER:    35.    Delvepoint lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, therefore, they are deemed to be denied.

COMPLAINT:    36.    With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law for those Covered Persons. This lawsuit seeks to protect their privacy without unnecessarily putting those individuals in the spotlight. Atlas will work with the Court and Defendants to implement a protective order to then provide Defendants with the assignments and other information for each of the Covered Persons.

ANSWER:    36.    Delvepoint admits only that the allegations in this Paragraph purports to summarize the claim filed by Plaintiffs. Delvepoint denies that Plaintiffs have asserted any valid claim against Delvepoint and further denies that Plaintiffs are entitled to any relief

against Delvepoint. The balance of this Paragraph does not contain any factual allegations to which a response is required.

**Defendants**

COMPLAINT:    37.    Defendant DELVEPOINT, LLC is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

ANSWER:    37.    Delvepoint denies.

COMPLAINT:    38.    Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due to what appears to be intentional efforts by data brokers to conceal the specific entities involved and responsible for the disclosure of data and information, and individuals responsible for Defendants failures to comply with the law.

ANSWER:    38.    Delvepoint lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, therefore, they are deemed to be denied.

COMPLAINT:    39.    Defendants offer and engage in the disclosure of data and information through one or more websites or applications, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey. Those websites include:

delvepoint.com

ANSWER:    39.    Delvepoint admits only that Delvepoint operates delvepoint.com. The remaining allegations of this Paragraph are denied.

COMPLAINT:         40.       In accordance with Defendants' business model, visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished home telephone number of the Individual Plaintiffs and Covered Persons).



ANSWER:       40.       Delvepoint denies.

COMPLAINT:    41.    As the screenshot above shows, visitors, users, or customers can not only obtain the protected information of the Individual Plaintiffs and Covered Persons but also the protected information of their family members.

ANSWER:    41.    Delvepoint denies.

COMPLAINT:    42.    Daniel's Law was passed to protect those who serve from the disclosure of this protected information by such services, which disclose such information of the Individual Plaintiffs and Covered Persons for their own commercial interests, without sufficient regard to the risks and consequences imposed on individuals.

ANSWER:    42.    Delvepoint admits only that legislation entitled Daniel's Law was passed in New Jersey. Delvepoint specifically denies any violation of Daniel's Law. The remaining allegations in this Paragraph consist of conjecture, opinion, and/or legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

## JURISDICTION AND VENUE

COMPLAINT:    43.    This Court has jurisdiction because the parties reside and/or conduct business in New Jersey, along with the Covered Persons, and the unlawful actions complained of herein occurred in New Jersey.

ANSWER:    43.    The allegations in this Paragraph are legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. By way of further answer, it is specifically denied that Delvepoint conducts business in New Jersey. Further, Delvepoint lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph concerning the residency of the purported "Covered Persons" and, therefore, they are deemed to be denied.

COMPLAINT:    44.    Venue is proper pursuant to R. 4:3-2, in that Morris County is the county in which one or more of the parties and/or Covered Persons reside and/or conduct business. In addition, many of the events giving rise to this action occurred in this County.

ANSWER:    44.    The allegations in this Paragraph are legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. By way of further answer, it is specifically denied that Delvepoint conducts business in New Jersey. Further, Delvepoint lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph concerning the residency of the purported "Covered Persons" and, therefore, they are deemed to be denied.

## FACTS COMMON TO ALL COUNTS

COMPLAINT:    45.    As set forth above, New Jersey enacted Daniel's Law in November 2020 (P.L. 2020, c. 125 *codified as* <u>N.J.S.A.</u> 47:lA-1, et seq. and <u>N.J.S.A.</u> 56:8-166.1).

ANSWER:    45.    Delvepoint admits.

COMPLAINT:    46.    Daniel's Law prohibits data brokers from disclosing or re-disclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

ANSWER:    46.    The allegations in this Paragraph refer to a statute which is a writing, the contents of which speak for itself, and Delvepoint denies any allegations that misconstrue, misinterpret, or mischaracterize that statute. By way of further answer, to the extent this Paragraph contains legal conclusions, no response is required. To the extent a response is required, the allegations are denied.

COMPLAINT:    47.    Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or re-disclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

ANSWER:    47.    The allegations in this Paragraph refer to a statute which is a writing, the contents of which speak for itself, and Delvepoint denies any allegations that misconstrue, misinterpret, or mischaracterize that statute. By way of further answer, to the extent this Paragraph contains legal conclusions, no response is required. To the extent a response is required, the allegations are denied.

COMPLAINT:    48.    This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

ANSWER:    48.    The allegations in this Paragraph refer to a statute which is a writing, the contents of which speak for itself, and Delvepoint denies any allegations that misconstrue, misinterpret, or mischaracterize that statute. By way of further answer, to the extent this Paragraph contains legal conclusions, no response is required. To the extent a response is required, the allegations are denied.

COMPLAINT:    49.    Daniel's Law was amended in 2023, as P.L. 2023, c. 113. The amendment was passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023.

ANSWER:    49.    Delvepoint admits.

COMPLAINT:       50.      Certain provisions of the amended law, including changes to

N.J.S.A. 56:8-166.1, went into effect immediately.

ANSWER:      50.      Delvepoint admits.

COMPLAINT:       51.      As of July 20, 2023, Daniel's Law as codified in N.J.S.A.

56:8-166.1 provided:

> 3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and
> not later than 10 business days following receipt thereof, a person, business,
> or association shall not disclose or redisclose on the Internet or otherwise
> make available, the home address or unpublished home telephone number
> of any covered person, as defined in subsection d. of this section.
>
> b. A person, business, or association that violates subsection a. of this
> section shall be liable to the covered person, or the covered person's
> assignee, who may bring a civil action in the Superior Court.
>
> c. The court shall award:
>        (1) actual damages, but not less than liquidated damages computed
>        at the rate of $1,000 for each violation of this act;
>        (2) punitive damages upon proof of willful or reckless disregard of
>        the law;
>        (3) reasonable attorney's fees and other litigation costs reasonably
>        incurred; and
>        ( 4) any other preliminary and equitable relief as the court determines
>        to be appropriate.
>
> d. For the purposes of this section:
>        ... "Disclose" shall mean to solicit, sell, manufacture, give, provide,
>        lend, trade, mail, deliver, transfer, post, publish, distribute, circulate,
>        disseminate, present, exhibit, advertise or o:ffer.,_and shall include making
>        available or viewable within a searchable list or database, regardless of whether a
>        search of such list or database is actually performed."

ANSWER:      51.      The allegations in this Paragraph refer to, quote, or summarize a

statute which is a writing. The writing speaks for itself, and Delvepoint denies any allegation or

characterization inconsistent with its complete substance.

COMPLAINT:      52.     Starting on or about January 1, 2024, each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure requests (via email) in accordance with Daniel's Law, using AtlasMail.

ANSWER:      52.     Delvepoint admits only that starting on or about January 1, 2024, Delvepoint received emails sent from @atlasmailservice.com. The remaining allegations of this Paragraph are denied.

COMPLAINT:      53.     For example, a true and correct copy of the email directly from Plaintiff Andreyev (with personal information redacted) is pasted here:



ANSWER:      53.     Delvepoint admits only that the email pasted in this Paragraph purports to be an email to customerservice@delvepoint.com from an @atlasmailservice.com email address with Peter Andreyev's name. Delvepoint denies that Mr. Andreyev sent the email to Delvepoint.

COMPLAINT:        54.        Defendants failed to cease the disclosure or re-disclosure on the Internet or the otherwise making available of the protected information of the Individuals Plaintiffs and Covered Persons within the time period required by Daniel's Law.

ANSWER:        54.        Delvepoint denies.

COMPLAINT:        55.        Even as of the date of this filing, Defendants still refuse to comply with Daniel's Law. Protected information of the Individual Plaintiffs and those Covered Persons who assigned Atlas their Daniel's Law claims against Defendants remains available from Defendants using Defendants' search tools or other means of disclosure.

ANSWER:        55.        Delvepoint denies.

COMPLAINT:        56.        All of the Covered Persons who sent their nondisclosure requests to Defendants (not including the Individual Plaintiffs) have assigned their claims against Defendants to Atlas.

ANSWER:        56.        Delvepoint denies that the purported "Covered Persons" sent the alleged nondisclosure requests to Delvepoint. Delvepoint denies that the purported assignments were proper or valid, that Plaintiffs' claims are permitted by Daniel's Law, and that Delvepoint is liable to Plaintiffs.  Delvepoint lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and, therefore, they are deemed to be denied.

COMPLAINT:        57.        The Individual Plaintiffs and Atlas hereby assert claims against Defendants based on their violation of Daniel's Law and continuing refusal to comply with that law.

ANSWER:        57.        Delvepoint admits only that Plaintiffs purport to assert claims against Delvepoint under Daniel's Law. The remaining allegations in this Paragraph are legal

conclusions to which no response is required. To the extent a response is required, the allegations are denied.

## <u>COUNT ONE</u>

### (Daniel's Law)

COMPLAINT:    58.    The allegations of the Complaint set forth above are included herein as if set forth at length.

ANSWER:    58.    This Paragraph is an incorporation paragraph to which no responsive pleading is required. Delvepoint hereby incorporates its answers to each of the foregoing Paragraphs as if they were fully set forth at length herein.

COMPLAINT:    59.    The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or re-disclosure on the Internet or wherever Defendants otherwise made it available.

ANSWER:    59.    Delvepoint denies.

COMPLAINT:    60.    Defendants had an obligation under Daniel's Law to comply with the request within ten (10) business days.

ANSWER:    60.    Delvepoint denies.

COMPLAINT:    61.    As of the date of this filing, Defendants still refuse to comply with Daniel's Law. The protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and the Covered Persons remains "available or viewable within a searchable list or database" or otherwise made available.

ANSWER:    61.    Delvepoint denies.

COMPLAINT:      62.      Defendants did not cease the disclosure or re-disclosure on the Internet or the otherwise making available of information as required under Daniel's Law, and their failure in doing so each constitute a separate violation under the law.

ANSWER:      62.      Delvepoint denies.

COMPLAINT:      63.      As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request all available relief.

ANSWER:      63.      Delvepoint denies.

COMPLAINT:      64.      As of the date of this filing, Defendants still refuse to comply with Daniel's Law. The protected information of the Individual Plaintiffs and the Covered Persons remains disclosed or otherwise made available despite proper requests for nondisclosure in violation of Daniel's Law. As such, Plaintiffs request that the Court enter all appropriate legal and equitable relief.

ANSWER:      64.      Delvepoint denies.

## AFFIRMATIVE AND OTHER DEFENSES

In further response to the allegations and claims set forth in the Complaint, Delvepoint hereby asserts the affirmative defenses and additional defenses set forth below. In asserting the following affirmative and additional defenses, Delvepoint does not admit that it bears either the burden of proof or burden of persuasion with respect to any matter or defense set forth below, nor does it concede that such matter (or the negation of the same) is not a part of the prima facie claims asserted by Plaintiffs in the Complaint:

1.      Plaintiffs' claims are barred in whole or in part because the Complaint fails to state a claim upon which relief may be granted.

2.      Plaintiffs' claims are barred in whole or in part because one or more Plaintiffs lack standing to pursue their claims.

3.      Plaintiffs' claims are barred in whole or in part because at all times relevant to this matter, Delvepoint acted in good faith and complied with all applicable laws, including Daniel's Law.

4.      Plaintiffs' claims are barred in whole or in part because Atlas is not an appropriate assignee under Daniel's Law, including because one or more of the assignments is invalid.

5.      Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and/or laches.

6.      Plaintiffs' claims are barred in whole or in part by the doctrine of unclean hands, as a result of, among other things, Atlas' intentional waiting, batching and sending of the takedown notices in a manner and during a time that was intended to induce noncompliance.

7.      Plaintiffs' claims are barred in whole or in part because Atlas' actions constitute entrapment in that it sent takedown notices in a burdensome manner.

8.      Plaintiffs' claims are barred in whole or in part because performance was impossible as a result of, among other things, the delay and intentional sending of thousands of takedown notices in a manner and at a time intended to make it impossible for Delvepoint to comply.

9.      Plaintiffs' claims are barred in whole or in part by Plaintiffs' failure to mitigate their damages, including but not limited to, by delaying the sending of takedown requests.

10.     The alleged damages sustained by Plaintiffs, if any, were caused by the conduct of third parties over whom Delvepoint had no control.

Case 1:24-cv-04096-HB     Document 97     Filed 02/23/26     Page 33 of 35 PageID: 2195

11.     Plaintiffs' claims are barred in whole or in part because Plaintiffs have not suffered any damages proximately caused by Delvepoint's actions.

12.     Plaintiffs' claims are barred in whole or in part because Plaintiffs did not comply with the obligations of Daniel's Law to trigger any obligations by Delvepoint under Daniel's Law.

13.     To the extent Delvepoint is found to be liable to Plaintiffs, Delvepoint is entitled to equitable indemnification from Atlas.

14.     Atlas failed to act as a reasonable actor by, for example, failing to provide identifiable information when its members made their takedown requests.

15.     Plaintiffs' claims for liquidated damages fail to the extent that such damages would constitute an impermissible penalty and/or fail to reasonably relate to any claimed actual damages.

16.     Plaintiffs' claim for punitive damages fails to the extent that the Complaint states no facts in support of a claim for punitive damages and/or to the extent that such damages would be inconsistent with state or federal constitutional principles.

17.     Plaintiffs' claims for injunctive relief fail to the extent that they have not set forth any basis for such relief, including as to Atlas, which is not a "Covered Person."

18.     Daniel's Law may not be enforced against Delvepoint because it facially violates the United States and/or New Jersey Constitutions. Alternatively, application of Daniel's Law against Delvepoint under the facts of this case would violate the United States and/or New Jersey Constitutions.

19.     Plaintiffs' claims fail because Delvepoint had no intention to violate Daniel's Law and was not negligent in its actions.

Page 33 of 35

20.    Plaintiffs' claims fail because Delvepoint does not own or control a database within the meaning of Daniel's Law, and therefore has no obligation to implement takedown requests received under Daniel's Law.

21.    Delvepoint reserves the right to assert any and all affirmative or additional defenses, both factual and legal, as may be justified by information subsequently obtained, and further incorporates any such defenses as if fully set forth herein.

## DEMAND FOR TRIAL BY JURY

Delvepoint hereby demands a trial by jury on all issues in the Complaint that are triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Delvepoint respectfully requests that this Honorable Court enter judgment against Plaintiffs and in favor of Delvepoint as follows:

1. Dismissing the Complaint with prejudice;

2. Awarding Delvepoint their attorneys' fees and costs; and

3. Awarding Delvepoint such further relief that the Court deems just and proper.

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I hereby certify that to my knowledge, the matter in controversy is not the subject of any other action in any court or other pending arbitration proceeding, and that no other actions or arbitration proceedings are contemplated. I have no knowledge at this time of the names of any other party who should be joined in this action.

Dated:  February 23, 2026

Respectfully submitted,

*/s/ Robert J. Cosgrove*

_____

By: Robert J. Cosgrove, Esq.
Attorney ID # 005222005
**WADE CLARK MULCAHY LLP**
955 South Springfield Avenue, Suite 100
Springfield, New Jersey 07081
(973) 258-1700
rcosgrove@wcmlaw.com
*Attorney for Defendant Delvepoint, LLC*